723 A.2d 1266 (1999)
Frederick MONROE, Plaintiff-Respondent,
v.
CITY OF PATERSON, the City of Paterson Police Department, and Victor M. Santiago, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Submitted January 19, 1999.
Decided March 1, 1999.
*1267 Dwyer, Connell & Lisbona, Fairfield, for defendants-appellants (Albert C. Lisbona, on the brief).
Richard Mik, Clifton, for plaintiff-respondent (Mr. Mik, on the brief).
Before Judges D'ANNUNZIO, CUFF and COLLESTER.
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
The issue is whether an uninsured motorist may recover medical expenses and lost income from a tortfeasor in an automobile negligence case.
Plaintiff, Frederick Monroe, a resident of Paterson, N.J., owned a 1976 Oldsmobile registered in New Jersey. In violation of N.J.S.A. 39:6A-3 and 6B-1, Monroe had failed to insure his vehicle. On August 7, 1993, Monroe was operating his uninsured vehicle in Paterson when he collided with a vehicle owned by the City of Paterson and operated by Victor M. Santiago, a City employee.
Monroe sued for damages consisting of economic loss, medical expenses and lost wages, and non-economic loss, such as pain and suffering. Because Monroe's claim is against a public entity and public employee, the New Jersey Tort Claims Act applies. N.J.S.A. 59:1-1 et. seq. The claim, however, is based on the alleged negligent operation of a motor vehicle and, therefore, implicates the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35, popularly known as the No-Fault Law.
The trial court granted partial summary judgment to defendants regarding Monroe's claim for non-economic loss, because Monroe had not established the injury threshold defined in N.J.S.A. 59:9-2(d)[1] of the Tort Claims Act. That determination is not an issue in this appeal.
Monroe pressed his claim for economic damages, and the liability issue was tried without a jury. The court apportioned responsibility for the collision ninety percent to Santiago and ten percent to Monroe.
Thereafter, defendant moved for summary judgment on the ground that Monroe was not entitled to recover economic damages because he had failed to insure his vehicle. The court denied defendants' motion and entered judgment in favor of Monroe for $9,240.00 in lost wages and $7,077.50 in medical expenses, for a total of $16,317.50. Judgement was entered for $14,685.75, reflecting the ten percent reduction for Monroe's negligence.
There is nothing in the record to suggest that Santiago's operation of the City's vehicle was cloaked with an immunity under the Tort Claims Act. Consequently, this is a motor vehicle negligence action[2], and Monroe's right to recover medical expenses and lost wages is governed by the No-Fault Law. Brooks v. Odom, 150 N.J. 395, 406-07, 696 A.2d 619 (1997) (holding that claimant could not recover against a public entity, her "out-of-pocket expenses for co-payments and deductibles under her [PIP] coverage.")
At the core of this case is the application of N.J.S.A. 39:6A-12 (section 12). It provides:

*1268 Except as may be required in an action brought pursuant to section 20 of P.L.1983, c. 362 (C. 39:6A-9.1), evidence of the amounts collectible or paid pursuant to sections 4 and 10 of P.L.1972, c. 70 (C. 39:6A-4 and 39:6A-10), to an injured person, including the amounts of any deductibles, copayments or exclusions, including exclusions pursuant to subsection d. of section 13 of P.L.1983, c. 362 (C. 39:6A-4.3), otherwise compensated is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.
The court shall instruct the jury that, in arriving at a verdict as to the amount of the damages for noneconomic loss to be recovered by the injured person, the jury shall not speculate as to the amount of the medical expense benefits paid or payable by an automobile insurer under personal injury protection coverage to the injured person, nor shall they speculate as to the amount of benefits paid or payable by a health insurer, health maintenance organization or governmental agency under subsection d. of section 13 of P.L.1983, c. 362 (C. 39:6A-4.3).
Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party.
[Emphasis added.]
The section 4 referred to in section 12 requires each automobile liability insurance policy to provide personal injury protection (PIP) coverage. N.J.S.A. 39:6A-4. PIP coverage includes medical expense benefits, income continuation benefits, essential services benefits, death benefits and funeral expense benefits. Ibid. Section 10 authorizes additional PIP coverage. N.J.S.A. 39:6A-10. PIP coverage is first party coverage, i.e., the insured collects the benefits from his or her carrier.
Defendants argue that Monroe's medical expenses and lost wages would have been "collectible" under PIP coverage, if Monroe had obeyed the law and insured his vehicle. Therefore, his medical expenses and lost wages were inadmissible under section 12 and not recoverable.
Our Supreme Court addressed section 12 in Roig v. Kelsey, 135 N.J. 500, 641 A.2d 248 (1994). There, the injured person's PIP coverage included a $250 medical expense deductible and a twenty-percent copayment for medical expenses between the deductible and $5,000. As a result, Kelsey, the injured person, had unpaid medical expenses of $553.80. Writing for the Court, Justice Garibaldi engaged in a comprehensive and thorough review of the legislative history of the No-Fault Law relevant to the issue, especially section 12. We need not relate the history of No-Fault legislation, but we shall rely on certain basic principles which emerged from Justice Garibaldi's analysis and we shall borrow freely from her opinion.
One of those principles is that of consumer choice. A consumer could elect certain automobile coverages which would provide greater or lesser rights. The trade-off was in premiums paid. Greater rights required higher premiums; lesser rights generated lower premiums. Roig, supra, 135 N.J. at 506-07, 641 A.2d 248. In the present case, Monroe achieved the ultimate in savings by paying no premiums.
A second relevant principle is that "by mandating the $250 deductible and the twenty-percent copayment, the Legislature guaranteed that in every automobile accident, some medical expenses would not be paid under PIP. For those below-deductibles and copayments, the insured was responsible, either through the insured's other insurance coverage, or, if the insured had no other insurance coverage, ... out of the insured's own pocket." Id. at 509, 641 A.2d 248.
In addressing the inadmissibility of PIP benefits under section 12, the Court stated:
In sum, courts have held that PIP benefits are strictly excluded from a civil suit by the injured party to serve a variety of goals: easing court congestion, lowering automobile-insurance premiums, and prohibiting double recovery of PIP expenses. Although Kelsey's case does not involve double recovery, we conclude that under no-fault the parties have traded lower premiums and prompt payment of medical *1269 expenses for a restriction on their right to sue.
[Roig, supra, 135 N.J. at 513, 641 A.2d 248.]
Justice Garibaldi identified an unacceptable anomaly:
If an insured chooses a $1,000 or $2,500 deductible in exchange for a premium reduction, the Legislature, clearly, did not intend that that insured would be able to sue the tortfeasor for the below-deductibles. Under that logic, insureds choosing the highest deductible would have the best deal: the lowest premium and the right to recover the excluded expenses in court against the tortfeasor ... To allow a claim for the deductible and the copayment would be antithetical to the entire No-Fault statutory scheme. That kind of recovery could be available only if the Legislature reinstituted a fault-based system.
[Roig, supra, 135 N.J. at 514, 641 A.2d 248.]
Justice Garibaldi addressed and rejected Kelsey's argument that section 12's exclusion of medical expense evidence applies only to those expenses "otherwise compensated," noting that "[s]uch an interpretation is contrary to the clear legislative intent of the No-Fault Law." Id. at 515, 641 A.2d 248.
Finally, the Court stated:
We are satisfied that the Legislature never intended to leave the door open for fault-based suits when enacting the No-Fault Law. If we adopted Kelsey's reading of the statute, courts would again feel the weight of a new generation of congestion-causing suits, and automobile-insurance premiums would again rise. If the Legislature disagrees with our interpretation of its intent, it is, of course, empowered to enact clarifying legislation.
[Roig, supra, 135 N.J. at 516, 641 A.2d 248.]
There was a legislative response. The Legislature amended N.J.S.A. 39:6A-4.5a (section 4.5) in 1997. L. 1997, c. 151, § 13. Prior to the amendment, section 4.5 provided that any injured person who was required to carry medical expense benefits coverage, but who failed to do so, was subject to the verbal threshold, N.J.S.A. 39:6A-8, for the recovery of noneconomic loss. The 1997 amendment of section 4.5 provides that such a person "shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile." The amendment, adopted after Monroe's injury, does not control this case, but it informs our analysis.
In Brooks v. Odom, supra, the Court held that a plaintiff may not recover from a public entity and public employee "her out-of-pocket expenses for co-payments and deductibles under her Personal Injury Protection ("PIP") coverage." Brooks, supra, 150 N.J. at 406, 696 A.2d 619. The Court identified the "underlying policy considerations" as preventing minor claims for reimbursement from clogging the court system. Id. at 406-07, 696 A.2d 619. The Court expressly left open "the question whether uninsured claimants who may not recover for pain and suffering under N.J.S.A. 59:9-2(d) may nonetheless recover the cost of their medical expenses." Id. at 407, 696 A.2d 619. As previously indicated, the Legislature, by amending section 4.5, answered "no" to the reserved question.
The present case is not controlled by amended section 4.5; it involves the issue the Court reserved in Brooks. Applying the principles of Roig and Brooks, we conclude that Monroe may not recover economic expenses that would have been collectible as PIP benefits had he insured his vehicle. Permitting uninsured vehicle owners to recover without contributing premiums to the insurance pool would increase premiums for those motorists who fulfill their statutory obligations by insuring their vehicles. Precluding recovery also avoids the anomaly Justice Garibaldi identified in Roig, placing an uninsured motorist in a better position than an insured driver. If permitted to sue for economic loss, the uninsured motorist would recover the deductible and copayment amounts. Additionally, an uninsured who satisfied the injury threshold and sued for pain and suffering would enjoy a tactical advantage at trial if he could introduce evidence of his out-of-pocket losses. Moreover, permitting recovery would add to court congestion *1270 because a tort action would be the only method of recovering economic loss.
The last sentence of section 12 permits the "recovery against the tortfeasor, of uncompensated economic loss." Assuming that this sentence permits recovery of a wage loss in excess of PIP income continuation benefits, Monroe, arguably, should be permitted to recover the difference between his wage loss and basic income continuation benefits of $100 per week. N.J.S.A. 39:6A-4b. Such a result, however, would require us to speculate regarding the level of coverage Monroe would have selected. Additional and substantial income continuation benefits are available from insurers as authorized in N.J.S.A. 39:6A-10. If Monroe had purchased insurance, we would know his benefit level. His failure to insure deprives us of that information. It is not unreasonable, therefore, to burden him with the consequences. Cf. Menichelli v. Mass. Gen. Life Ins. Co., 152 N.J. 194, 196, 704 A.2d 546 (1997) (holding that material misrepresentation that decedent was not a cigarette smoker required rescission rather than reformation to establish beneficiary's liability for higher premiums; the remedy of reformation would reward and promote dishonesty); Mass. Mutual Life Ins. Co. v. Manzo, 122 N.J. 104, 115, 584 A.2d 190 (1991) (holding that life insurer may rescind policy for material misrepresentation though the truth would not have precluded issuance of policy; dishonest applicant must not be placed in a better position than honest applicant, and incentive for dishonesty must be avoided). Moreover, this approach is consistent with the legislative policy recently expressed in the amendment to section 4.5.
Finally, we address Monroe's argument that the provision of section 4.5 in effect when Monroe was injured, imposed a limited sanction for failure to carry insurance, to wit, that the injured party had to satisfy the verbal threshold to pursue a claim for noneconomic loss. Monroe contends, therefore, that section 4.5 implied that an uninsured injured party could pursue a claim for economic damages.
We reject this argument. Former section 4.5 dealt only with an injured party's right to recover damages for noneconomic losses. It did not address economic damages, perhaps because section 12 provided that amounts collectible through PIP coverage were not admissible.
The judgment is reversed.
NOTES
[1] N.J.S.A. 59:9-2(d) authorizes damages for pain and suffering only "in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment when the medical expenses are in excess of $1,000.00."
[2] N.J.S.A. 59:3-1 states that "[e]xcept as otherwise provided by this act, a public employee is liable for injury caused by his act or omission to the same extent as a private person."

N.J.S.A. 59:2-2 provides that a public entity is liable when its public employee is liable acting within the scope of his employment.