772 A.2d 21 (2001)
339 N.J.Super 392
Ashok A. MODY, Plaintiff-Appellant,
v.
Geraldine BROOKS and Allstate Insurance Company, Defendant-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued March 27, 2001.
Decided April 16, 2001.
*22 Barry D. Epstein, Newark, argued the cause for appellant (Epstein Beirne, attorneys; Mr. Epstein, of counsel; Joseph D. Guarino, on the brief).
Keri Avellini argued the cause for respondents (McDermott & McGee, attorneys; Daniel G.P. Marchese, of counsel and on the brief).
Before Judges KESTIN, CIANCIA and ALLEY.
The opinion of the court was delivered by ALLEY, J.A.D.
On April 5, 1999, plaintiff, Ashok A. Mody, filed a complaint against defendants, Geraldine Brooks (Brooks) and Allstate Insurance Company (Allstate), seeking property damages that allegedly resulted from an automobile accident on January 3, 1999. Plaintiff made no claim for personal injuries and evidently suffered none.
This appeal turns on whether, as the motion judge ruled, plaintiff's action is barred by the New Jersey Automobile Reparation Reform Act, N.J.S.A. 39:6A-1 to -35. (No Fault Act or "Act"), in particular N.J.S.A. 39:6A-4.5, which provides:
Failure to maintain required medical expense coverage; effect on recovery for noneconomic loss
a. Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain medical expense benefits coverage mandated by section 4 of P.L. 1972, c. 70 (C.39:6A-4) or section 4 of P.L.1998, c. 21 (C.39:6A-3.1) shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile.
We conclude that the claim is not barred and reverse.
The incident in suit occurred in the early morning of January 3, 1999, when plaintiff was driving his automobile southbound on Routes 1 and 9 in Newark. Brooks, the owner and operator of another automobile, struck plaintiff's automobile from behind, allegedly resulting in its total loss.
At the time of the accident, Brooks maintained an automobile insurance policy through Allstate. According to plaintiff, Allstate represented to him "that it would pay the claim arising out of the accident involving" Brooks. Allstate then issued a payoff check for plaintiff's loss, but thereafter notified plaintiff that it was denying his claim in light of N.J.S.A. 39:6A-4.5, "because he was ... driving an uninsured motor vehicle ..." and stopped payment on the check.
Plaintiff concedes that, at the time of the accident, his automobile was not insured and that it was not covered by an automobile insurance policy which afforded personal injury protection (PIP) benefits. Plaintiff maintains, however, that the trial court erred in ruling that N.J.S.A. 39:6A-4.5(a) bars him from recovering property damages. He takes the position that the statute bars recovery only for economic and noneconomic losses resulting from bodily injury. We agree both because of the plain language of the statute, and in the alternative, to the extent the statute *23 may be seen as ambiguous, because that is an appropriate implementation of the legislative intent and the case law.
As stated, N.J.S.A. 39:6A-4.5(a) provides that
Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain medical expense benefits coverage mandated by section 4 of P.L. 1972, c. 70 (C.39:6A-4) or section 4 of P.L.1998, c. 21 (C.39:6A-3.1) shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile.
To us, the preclusive language of the statute is plain. Only if there is an accident "resulting in injuries to that person," is the uninsured party barred from suit. Plaintiff in this case did not sustain personal or bodily injury. He sustained only property damage, and the statute thus does not preclude him from bringing suit. We note that the term "injuries to that person" or "personal injury" in the statute is of course employed in the automobile accident context. We thus have no occasion to explore more expansive possible usages of that expression that have been urged, though not necessarily adopted, in other fields, such as racial discrimination cases, see Powell v. Alemaz, Inc., 335 N.J.Super. 33, 760 A.2d 1141 (App.Div. 2000), or appraiser malpractice, see Johnson v. American Homestead Mortg. Corp., 306 N.J.Super. 429, 703 A.2d 984 (App.Div. 1997).
If the Legislature had intended to preclude an uninsured person who had sustained any type of damages in an automobile accident from bringing suit, it would have been familiar with the general, all-encompassing term, "damages," and presumably would have used it in the statute under review. In the ordinary automobile cases, the general, all-encompassing term "damages" includes not only bodily injury but all categories of losses for which recovery may be had: bodily or personal injury; medical expenses; damage to physical property, and so forth.
Although this usage of the term "damages" is not entirely consistent in every case, numerous examples comport with our interpretation. For example, at the outset of the opinion in Rappeport v. Flitcroft, 90 N.J.Super. 578, 579, 218 A.2d 873 (App. Div.1966), Judge Goldmann stated:
Plaintiff's two-count complaint, filed December 3, 1964, sought damages for (1) damage to his automobile and (2) personal injuries resulting from a collision with the automobile of defendant Suburban Discount Garden Centers, Inc., operated by defendant Flitcroft, its employee.
And in Werner v. Latham, 332 N.J.Super. 76, 83, 752 A.2d 832 (App.Div.2000) Judge Pressler wrote:
We think it plain that the $600,000 in available coverage was unlikely to compensate this catastrophically injured plaintiff for the full amount of his damages considering his pain and suffering, disability, and loss of income.
The Legislature chose not to use the term "damages," however, and instead it limited the statutory bar to a single category, an accident "resulting in injuries to that person," a term we view as clearly synonymous with "personal injuries" or "bodily injury." Because plaintiff has made no claim for such injuries, and evidently has no such claims to assert, the statute patently does not bar his claim.
Even if the statute were considered ambiguous, by referring to the legislative history it becomes evident that plaintiff's claim is not barred. In construing a statute, our "first obligation is to consider the *24 statute's plain meaning." State v. Marchiani, 336 N.J.Super. 541, 546, 765 A.2d 765 (App.Div.2001); accord State v. Hoffman, 149 N.J. 564, 578, 695 A.2d 236 (1997); State v. Szemple, 135 N.J. 406, 421, 640 A.2d 817 (1994); Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992); Town of Morristown v. Woman's Club of Morristown, 124 N.J. 605, 610, 592 A.2d 216 (1991).
If differing interpretations exist, then the phrase's meaning is not obvious or self-evident on its face. When a statute is ambiguous, a court's function is to ascertain and to effectuate the Legislature's intent. Extrinsic aids, such as legislative history, committee reports, and contemporaneous construction, may be used to help resolve any ambiguity and to ascertain the true intent of the Legislature.
[Hoffman, supra, 149 N.J. at 578, 695 A.2d 236 (internal citations omitted).]
Accord Szemple, supra, 135 N.J. at 422, 640 A.2d 817; see also Maros v. Transamerica Ins. Co., 76 N.J. 572, 577, 388 A.2d 971 (1978) (in the case of ambiguity, a court "should seek for that reconciliation of the provisions which most probably comports with the statutory language and the purposes and objects" of the No Fault Act).
To ascertain the legislative intent, we may "consider not only the particular statute in question, but also the entire legislative scheme of which it is a part," here, N.J.S.A. 39:6A-1 to -35. Roig v. Kelsey, 135 N.J. 500, 515, 641 A.2d 248 (1994) (quoting Kimmelman v. Henkels McCoy, Inc., 108 N.J. 123, 129, 527 A.2d 1368 (1987)). "[T]he history of the no-fault insurance law constitutes an important aid in illuminating and `giving effect to the legislative intent.'" Gambino v. Royal Globe Ins. Cos., 86 N.J. 100, 105, 429 A.2d 1039 (1981).
We begin our review of the legislative scheme by examining the state of the law before the No Fault Act was enacted. At that time,
a victim injured in an automobile accident waited many years to have his claim processed through the courts, all the while incurring huge expenses for medical bills and lost wages that could only be recovered as an element of damages in the claim against the tortfeasor. The fact that any automobile accident victims received inadequate reimbursement for their injuries, or none at all, was considered a major deficiency... causing substantial and unwarranted hardship for such victims. This ... situation was exacerbated by the then-operative common law principles of contributory negligence that barred any recovery by an injured driver unless he was entirely blameless. The Comparative Negligence Act, which softened the effect on a somewhat negligent plaintiff, was adopted effective August 1973. That act, N.J.S.A. 2A:15-5.1 et seq., no longer barred recovery by such a person but merely diminished plaintiff's recovery by the percentage of his or her own negligence as long as it was less than that of the defendant.
[Cynthia M. Craig and Daniel J. Pomeroy, New Jersey Auto Insurance Law, § 4.1 (2001) (internal citation omitted); see also Gambino, supra, 86 N.J. at 106, 429 A.2d 1039.]
In 1972, the No Fault Act was enacted by P.L.1972, c. 70, a step that "resulted in large measure from the efforts of a Joint Legislative Automobile Insurance Commission [ ("Commission") ] that examined the insurance problem for more than one year before issuing its report." Craig and Pomeroy, New Jersey Auto Insurance Law, supra, § 4.1. As the same authors note, *25 The Court in Gambino v. Royal Globe Ins. Cos., supra, outlined the "four major concerns" that the commission intended to address in its legislative recommendations:
(1) The prompt and efficient provision of benefits for all accident injury victims. (The Reparation objective.)
(2) The reduction or stabilization of the prices charged for automobile insurance. (The Cost objective.)
(3) The ready availability of insurance coverage necessary to the provision of accident benefits. (The Availability objective.)
(4) The streamlining of the judicial procedures involved in third-party claims. (The Judicial objective).
[Ibid. (quoting Gambino, supra, 86 N.J. at 105-06, 429 A.2d 1039).]
Of these four goals, "[t]he reparation objective was viewed as the `primary purpose of an automobile insurance system' and was given `priority' by the Commission in formulating the proposals which served as the basis for the PIP statute, N.J.S.A. 39:6A 1 et seq." Gambino, supra, 86 N.J. at 106, 429 A.2d 1039. "To achieve this goal ... the legislation required that courts interpret the statutory language whenever possible to promote, `prompt payment to all injured persons for all of their losses.'" Craig and Pomeroy, New Jersey Auto Insurance Law, supra, § 4.1 (quoting Gambino, supra, 86 N.J. at 107, 429 A.2d 1039).
When the Act went into effect, the Governor stated that its purpose was to "expedit[e] the relief of the accident victim and his family from a frequently staggering and intolerable economic burden, and yet preserving the victim's right to full and adequate compensation in cases which involve more serious and disabling injury." Roig, supra, 135 N.J. at 502-03, 641 A.2d 248 (quoting Governor's Second Annual Message (January 11, 1972)).
The No Fault Act in its original form provided that an injured person "could file a lawsuit only if medical expenses exceeded a $200 threshold." Id. at 504, 641 A.2d 248; see also Craig and Pomeroy, New Jersey Auto Insurance Law, supra, at § 4:3-1 (stating that the Act "barred suits against wrongdoers for relatively minor injuries"). "In frequent attempts to lower the cost of insurance and eliminate minor personal-injury claims, the Legislature amended the No-Fault Law again in 1983, 1988, ... 1990 [, and 1998]." Roig, supra, 135 N.J. at 504, 641 A.2d 248; see also Craig and Pomeroy, New Jersey Auto Insurance Law, supra, at §§ 4:3-2, 3-4, 3-7 (noting minor amendments to the No Fault Act that went into effect in 1978, 1982, 1984, 1986, and 1996).
In 1983, the first general revision of the statute was undertaken, and the Legislature enacted the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984 ("1984 Act"). Ibid. "[T]he 1984 Act created a mechanism by which persons purchasing automobile insurance could reduce their premiums by reducing their benefits." Craig and Pomeroy, New Jersey Auto Insurance Law, supra, at § 4:3-3. It established a choice for consumers: "lower premiums in exchange for increased tort thresholds." Roig, supra, 135 N.J. at 505, 641 A.2d 248.
In 1988, the Legislature amended the No Fault Act by enacting "`An Act concerning private passenger automobile insurance and revising parts of statutory law[.]'" Id. at 506, 641 A.2d 248 (quoting Emmer v. Merin, 233 N.J.Super. 568, 573, 559 A.2d 845 (App.Div.), certif. denied, 118 N.J. 181, 570 A.2d 950 (1989)). "[T]he Legislature gave the consumer the choice of a limited right to sue and a lower premium, or no limitation and a higher premium." *26 Id. at 506-07, 641 A.2d 248 (quoting Emmer, 233 N.J.Super. at 585, 559 A.2d 845).
The insured was given the right to choose between two tort options.... The first allowed recovery for non-economic losses (pain, suffering, and inconvenience) that fit into one of nine specified categories, and was known as the "verbal" or "lawsuit" threshold. The second choice was an unrestricted right to sue for recovery of non-economic damages. That option was referred to as "zero dollar" or "no" threshold.
[Id. at 507, 641 A.2d 248].
The amendment also incorporated "a mandatory deductible provision for medical expenses compensable under PIP." Craig and Pomeroy, New Jersey Auto Insurance Law, supra, at § 4:3-5.
The Legislature again amended the No Fault Act when it enacted the Fair Automobile Insurance Reform Act of 1990. Craig and Pomeroy, New Jersey Auto Insurance Law, supra, at § 4:3-6. "The principal changes made to the PIP structure by the legislation include": (1) "[a]pplication of the zero threshold to claimants who are not required to maintain PIP coverage of their own and who are not considered immediate and resident family members of any insured person"; (2) "[a]doption of a $250,000 cap on medical expenses compensable under PIP ... although allowing insurers to offer additional first-party medical coverage if they choose to do so"; (3) "[c]reation of an option for insureds to have their health insurance primarily responsible for payment of PIP-like benefits ... and giving those health insurance carriers the same rights as other PIP insurers to make a direct claim against a tortfeasor to recover benefits paid"; (4) "[i]mposition of a limit on medical fees chargeable for services compensable by PIP pursuant to the rate schedules set by the Insurance Commissioner, while requiring that the fee schedules reflect, where possible, the reasonable and prevailing fees of 75 percent of practitioners in the region"; and (5) "[r]evision of the time frame within which an insurer had to either pay a PIP claim or face mandatory interest payments from 30 days to 60 days." Ibid.; see also New Jersey Coalition of Health Care Profs., Inc. v. New Jersey Dep't of Banking and Ins., 323 N.J.Super. 207, 217-18, 732 A.2d 1063 (App.Div.), certif. denied, 162 N.J. 485, 744 A.2d 1208 (1999).
The Legislature further amended the No Fault Act when it adopted the Automobile Insurance Cost Reduction Act of 1998 ("AICRA"), which became effective in 1999. Craig and Pomeroy, New Jersey Auto Insurance Law, supra, at § 4:3-8. In particular, AICRA amended N.J.S.A. 39:6A-4.5. Monroe v. City of Paterson, 318 N.J.Super. 505, 510, 723 A.2d 1266 (App. Div.1999).
Prior to the amendment, section 4.5 provided that any injured person who was required to carry medical expense benefits coverage, but who failed to do so, was subject to the verbal threshold, N.J.S.A. 39:6A-8, for the recovery of noneconomic loss. The 1997 amendment of section 4.5 provides that such a person shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured motor vehicle.
[Ibid.]
The legislative history and the evolution of the enactments in this field show that a primary focus of the No Fault Act and its amendments was on allocating the cost of medical expense benefits, and recoveries for bodily injuries. The language of N.J.S.A. 39:6A-4.5(a), prior to the enactment of AICRA, effective in 1999, is of *27 significance because it provided that an action brought by a person not carrying the compulsory insurance was subject to the verbal threshold, which is a standard that applies solely to bodily injuries. See N.J.S.A. 39:6A-8; Craig and Pomeroy, New Jersey Auto Insurance Law, supra, at § 15:4-1a (discussing the pre-AICRA verbal threshold). From this it is evident that N.J.S.A. 39:6A-4.5(a) in its form at the time of plaintiff's accident only barred recovery for economic and noneconomic losses resulting from bodily injury.
Significantly, the Legislature did not address the situation where the accident victim did not sustain bodily injuries, but rather property damage resulted to the automobile, i.e., there was economic damage from the accident. If the Legislature had intended the phrase "resulting in injuries to that person" to mean both economic and bodily injuries, it surely would have so indicated in the legislative history or the Legislature would have stated so in the language of the statute. The Legislature is certainly aware of the two categories of loss. See, e.g., N.J.S.A. 39:6A-3(a), (b), (c) (classifying compulsory automobile insurance coverage into categories of bodily injury and property damage).
Moreover, the phrase "resulting in injuries to that person" refers only to bodily injuries because the PIPS' coverage required by the Act means and includes: medical expense benefits, income continuation benefits, essential services benefits, death benefits, and funeral expense benefits. N.J.S.A. 39:6A-4(a), (b), (c), (d), (e). Each of these benefits flows from bodily injury rather than property damage. Ibid. Thus, the whole purpose of N.J.S.A. 39:6A-4.5 is to impose a disability on those persons who did not maintain PIP benefits as required by N.J.S.A. 39:6A-4, namely, a bar to their being compensated for their bodily injuries.
This conclusion is consistent with case law. In order for the PIP section of the No Fault Act to be implicated, the victim of the automobile accident must have suffered bodily injury. See, e.g., Roig, supra, 135 N.J. at 511, 641 A.2d 248 (courts have "consistently recognized that the No-Fault Law was intended to be a trade-off between the prompt payment of medical expenses, regardless of fault, and a restriction on the right of an injured party to sue a tortfeasor for minor personal injuries stemming from automobile accidents") (emphasis added); Hoglin, supra, 144 N.J. at 481, 677 A.2d 705 ("N.J.S.A. 39:6A-4 requires that all PIP endorsements provide personal injury protection coverage to the named insured and members of his family residing in his household who sustain bodily injury as a result of any accident involving an automobile,") (emphasis added); Liberty Mut. Ins. Co. v. Hyman, 334 N.J.Super. 400, 401, 403, 412, 759 A.2d 894 (Law Div.2000) (holding that the owner of a registered but uninsured automobile was barred from pursuing an uninsured motorist claim for her alleged personal injuries under N.J.S.A. 39:6A-4.5).
The trial court focused on the definition of "economic loss" and concluded that the use of the word is general and not limited to economic loss resulting from personal injuries. N.J.S.A. 39:6A-2(k) states that "`Economic loss' means uncompensated loss of income or property, or other uncompensated expenses, including, but not limited to, medical expenses." This definition, however, was not in effect at the time of plaintiff's accident, as it was passed as part of AICRA and was "effective 90 days following the establishment by the Commissioner of Banking and Insurance of basic benefits required by N.J.S.A. 39:6A-4 or the adoption by rules of the professional boards of the designation of valid *28 diagnostic tests pursuant to N.J.S.A. 39:6A-4.7, whichever is later." N.J.S.A. 39:6A-2. Even if this new definition were deemed applicable to the circumstances at hand, therefore, because it went into effect after the date of the accident, it would not be controlling. See Monroe, 318 N.J.Super. at 510, 723 A.2d 1266.
Accordingly, based on the plain language of the statute, and alternatively on the legislative history and the development of the statutory and case law, we conclude that N.J.S.A. 39:6A-4.5(a) is applicable only where the automobile accident victim has sustained bodily injuries. In the present case there is nothing in the record that indicates that plaintiff has sustained bodily injuries, and N.J.S.A. 39:6A-4.5(a) does not bar plaintiff's claim for property damages.
We reverse the order of the trial court and remand for further proceedings.