809 A.2d 146 (2002)
355 N.J. Super. 1
Jorge O. CAVIGLIA and Mabel Brun Caviglia, Plaintiffs-Respondents,
v.
ROYAL TOURS OF AMERICA and Hector Mundo, Defendants-Appellants.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 2002.
Decided November 8, 2002.
*148 David A. Semple, Newark, argued the cause for appellants (Newman Fitch Altheim Myers, attorneys; Mr. Semple, of counsel; Floyd G. Cottrell, on the brief).
Norberto H. Yacono, Patterson and Kenneth C. Marano, Wyckoff, argued the cause for respondents (Messrs. Yacono and Marano, on the brief).
Prince F. Kessie, Deputy Attorney General, argued the cause on behalf of amicus curiae State of New Jersey (David Samson, Attorney General, attorney; Patrick DeAlmeida, Deputy Attorney General, of counsel; Mr. Kessie, on the brief).
Susan Stryker, Trenton, argued the cause on behalf of amicus curiae Insurance Council of New Jersey (Sterns & Weinroth, attorneys; Ms. Stryker, on the brief; Mitchell A. Livingston, on the brief).
Before Judges PRESSLER, CIANCIA and HOENS.
*147 The opinion of the court was delivered by PRESSLER, P.J.A.D.
Defendants Royal Tours of America and Hector Mundo, its employee, appeal on leave granted from the denial of their motion for summary judgment dismissing the automobile-negligence complaint of plaintiffs Jorge O. Caviglia and Mabel Brun Caviglia, his wife. The motion was based on N.J.S.A. 39:6A-4.5, which, prior to its 1997 amendment, precluded an uninsured driver from recovering non-economic damages from the tortfeasor unless he met the verbal threshold. The 1997 amendment of that statute precludes an uninsured driver from asserting any cause of action against the tortfeasor. Judge Seymour Margulies, holding that the 1997 and 1998 versions of the statute are unconstitutional,[1] denied defendants' motion for summary judgment and permitted plaintiffs' action against defendants for non-economic damages to proceed. We affirm.
The facts are straightforward and undisputed. Plaintiff Jorge O. Caviglia was the owner of a 1984 Ford Tempo. The insurance covering that vehicle had been canceled. On October 13, 1997, while the vehicle was still uninsured, plaintiff had an accident while driving it. According to his complaint, his vehicle, while stopped, was sideswiped by a bus owned by defendant Royal Tours and operated by defendant Mundo. He claims to have suffered serious injuries. Plaintiff, joined by his wife Mabel Brun Caviglia, who sued per quod, then brought this action.
Defendants, relying on the 1997 statute, moved for summary judgment dismissing the complaint because the vehicle was uninsured. The motion was granted, and plaintiffs timely moved for reconsideration. The Attorney General was noticed of the constitutional challenge pursuant to R. 4:28-4 but chose not to intervene. On reconsideration Judge Margulies, for the reasons set forth in his written opinion dated July 18, 2002, concluded that the *149 revised statute, because of its total preclusion of a right of action against the tortfeasor, ran afoul of the equal protection guarantees of the Fourteenth Amendment of the United States Constitution. A conforming order was entered, and we granted defendant's motion for leave to appeal. We agree with Judge Margulies and accordingly affirm.
Disposition of this appeal requires some abbreviated consideration of the originally enacted New Jersey Automobile Reparation Reform Act (No Fault Act), N.J.S.A. 39:6A-1 to -35, amended from time to time, comprehensively revised by the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act of 1984 (Cost Containment Act), L. 1983, c. 362, and again comprehensively amended by the Automobile Insurance Cost Reduction Act of 1998 (AICRA), L. 1998, c. 21. N.J.S.A. 39:6A-3 requires every owner of a motor vehicle registered or principally garaged in this state to maintain automobile liability insurance. N.J.S.A. 39:6A-4 requires every automobile liability policy to include coverage for personal injury protection (PIP), including medical expenses, income continuation benefits, essential services benefits, survivor benefits, and funeral expenses. N.J.S.A. 39:6A-12 makes clear that these economic benefits, if collectible by the insured from his own insurer, whether or not actually collected, are not also recoverable from the tortfeasor. See generally Roig v. Kelsey, 135 N.J. 500, 641 A.2d 248 (1994). Moreover, if a person is required to but does not have automobile insurance and hence has no PIP coverage to resort to, he has been held foreclosed from seeking recovery from the tortfeasor of those economic damages that would have been available under PIP coverage if he had had it. Monroe v. City of Paterson, 318 N.J.Super. 505, 723 A.2d 1266 (App.Div.1999).
With respect to recovery of non-economic damages from the tortfeasor by any victim of an automobile accident, insured or not, the scheme of the No Fault Act, N.J.S.A. 39:6A-8, as originally adopted, was simply the imposition of a $200 medical-expense limit on claims based on soft-tissue injuries. The monetary threshold[2] was replaced in 1988, L. 1988, c. 119, § 6, by the provision requiring the insurer to offer the insured two options, the so-called verbal threshold or the so-called tort option. The verbal threshold, for which a smaller premium was charged, limited actions against the tortfeasor to those cases involving serious injuries as defined by the nine categories of injury therein described. See generally Oswin v. Shaw, 129 N.J. 290, 295-297, 609 A.2d 415 (1992). And see Craig & Pomeroy, New Jersey Auto Insurance Law, Chapter 15 (Gann 2002). We need not address the fundamental change made by AICRA in N.J.S.A. 39:6A-8, namely, the requirement of a medical certificate of defined injury.
The scope of the verbal threshold generated controversy respecting those, other than insureds opting for it, who were subject to its tort-suit limitation. See Craig & Pomeroy, supra, § 15:3-2. The class of such persons that concerns us is that of the uninsured driver, a class directly addressed by the Legislature. N.J.S.A. 39:6A-4.5, in its original version, provided that:
Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain medical expense benefits coverage mandated by section 4 of P.L. 1972, c. 70 (C. 39:6A-4) shall:

*150 a) For the purposes of filing an action for the recovery of noneconomic loss, as defined in section 2 of P.L. 1972, c. 70 (C. 39:6A-2), be subject to the tort option specified in subsection a. of section 8 of P.L. 1972, c. 70 (C-39:6A-8).
Consequently, the situation of an uninsured injured driver was simply that he could not recover from the tortfeasor those economic damages that would have been available to him under PIP coverage. He could, however, sue the tortfeasor for non-economic damages provided his injury was sufficiently serious to meet the verbal threshold.
We now address the 1997 amendment of N.J.S.A. 39:6A-4.5. That amendment effected the dramatic change of precluding suit by an uninsured injured driver against the tortfeasor for any element of damage.[3] Paragraph a of that amendment provided that:
Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain medical expense benefits coverage mandated by section 4 of P.L. 1972, c. 70 (C 399-6A-4) shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile.
That provision was readopted by AICRA, which added to the failure to maintain medical expense benefits, a failure to maintain the insurance mandated by N.J.S.A. 39:6A-3.1. AICRA also added paragraphs b and c, precluding, respectively, a cause of action by a person driving while intoxicated and a cause of action by a person causing intentional injury by operation of his vehicle.
The consequence of the 1997 and 1998 amendments is clear and unambiguous. The uninsured injured driver is left entirely without any opportunity at all to obtain compensation for any of his losses from the person who negligently or intentionally inflicted them irrespective of the severity of his injuries, irrespective of his freedom from fault for the occurrence of the accident, irrespective of whether the tortfeasor himself was uninsured, and irrespective of whether the tortfeasor was driving while intoxicated or under some other disability. We are persuaded that this total preclusion is constitutionally unsustainable under this State's equal protection and substantive due process jurisprudence.
We begin with the proposition, stated by the New Jersey Supreme Court nearly fifty years ago in Katobimar Realty Co. v. Webster, 20 N.J. 114, 123, 118 A.2d 824 (1955), and still viable today, that "[t]he constitutional principles of due process and equal protection demand that the exercise of the [police] power be devoid of unreason and arbitrariness, and the means selected for the fulfillment of the policy bear a real and substantial relation to that end. In a word, the authority coincides with the public need." See also Drew Associates of NJ, LP v. Travisano, 122 N.J. 249, 258-259, 584 A.2d 807 (1991). It is within that overarching principle that our Court has distinguished between equal protection and substantive due process claims. As explained by Greenberg v. Kimmelman, 99 N.J. 552, 562, 494 A.2d 294 (1985):
Although both clauses are available as a means of protecting against unjustified state regulation of individual rights, they protect against different evils. When a court invalidates a statute on due process *151 grounds, the court is saying, in effect, that the statute seeks to promote the state interest by impermissible means.... In contrast, when a court declares a statute invalid on equal protection grounds, it is not saying the legislative means are forbidden, but that the Legislature must write evenhandedly.
We are persuaded that N.J.S.A. 39:6A-4.5 contravenes both constitutional doctrines as they are implemented in this State.
We consider both doctrines in light, first, of the public purpose sought to be advanced by that statute. New Jersey's automobile insurance laws, as they have undergone numerous and complex permutations throughout the last several decades, have been designed to achieve the goals of reduced or stabilized insurance premiums, the protection of the public that results from compulsory insurance, prompt payment of economic losses, and relief to court calendars and potential litigants from the burden and expense of adversarial proceedings involving minor injuries by substituting therefor a direct-payment compensation system for economic losses. See generally Oswin v. Shaw, supra, 129 N.J. at 295-297, 609 A.2d 415; Gambino v. Royal Globe Ins. Cos., 86 N.J. 100, 105-106, 429 A.2d 1039 (1981); Mody v. Brooks, 339 N.J.Super. 392, 400-401, 772 A.2d 21 (App.Div.2001). Despite, however, the Legislature's laudable intentions and its considerable efforts over the years, these goals have not been fully achieved, and AICRA is its latest attempt at realizing them.
In short then, the question before us is whether the total abrogation of the common-law right of a seriously injured uninsured driver of the right to pursue a tort remedy, even a limited or qualified remedy, bears a real and substantial relationship to any of the recognized goals of tort reform. We believe the answer must be in the negative. We preface our analysis with the recognition that advancement of the legislative purposes of the automobile-insurance laws has been held, and properly so, to warrant limitations and qualifications upon the common-law tort right. See, e.g., Whitaker v. DeVilla, 147 N.J. 341, 356-357, 687 A.2d 738 (1997) (sustaining the legislative imposition of the verbal threshold on out-of-state drivers injured in New Jersey); Phillips v. Phillips, 267 N.J.Super. 305, 319, 631 A.2d 564 (App.Div.1993) (finding no constitutional infirmity in the verbal threshold limitation on tort claims against the tortfeasor whether or not the tortfeasor is a New Jersey or out-of-state driver); Rybeck v. Rybeck, 141 N.J.Super. 481, 358 A.2d 828 (Law Div.1976) (generally sustaining the constitutionality of the No Fault Act then in place). In effect, the No Fault Act, as it has evolved over the years, offers important trade-offs which, as a matter of public policy, justify the Legislature's determination that tort causes of action for noneconomic losses resulting from personal injury should be available only when the injuries are serious, as it has from time to time defined "serious." In sum, the injured person, if required himself to be insured and if in fact insured, receives a trade-off of prompt payment by his own insurer of his economic losses while being spared, at least in that respect, the expense and burden of litigation as a condition of obtaining that compensation. By choosing the verbal threshold option, he is also able to secure a lower premium.
Those underpinnings of the No Fault Act are common to those states which have adopted some form of no-fault legislation, and those states have ordinarily rejected constitutional challenges to their respective schemes not only on the basis of these trade-offs but also because a residual right to sue in tort for serious injuries remains, *152 as it did in New Jersey before the 1997 amendment of N.J.S.A. 39:6A-4.5. See, e.g., Stevenson v. Reese, 239 Mich.App. 513, 609 N.W.2d 195, 198 (2000); Scarpelli v. Marshall, 92 Misc.2d 244, 399 N.Y.S.2d 1001, 1003 (Sup.Ct.1977). But see Yoshioka v. Superior Court, 58 Cal.App.4th 972, 68 Cal.Rptr.2d 553, 560-564 (1997) (upholding the constitutionality of Cal. Civ. Code § 3333.4 (West 2002) permitting uninsured drivers to sue only drunk drivers). We have not found nor have we been directed by the parties to any state imposing an absolute bar. And it is that absolute bar that is our context here.
We address the due process challenge in accordance with the Katobimar formulation, namely, whether the absolute bar bears "a real and substantial relation" to the Legislature's no-fault goals. With respect to the goal of relieving court congestion, we again emphasize that it was only the suit for minor injuries, that is, those injuries failing to meet the current verbal threshold definition, that are intended by no-fault legislation to be kept out of the courts. But in respect of uninsured drivers, the verbal-threshold condition added by the 1985 adoption of N.J.S.A. 39:6A-4.5 had already accomplished that goal. As to a goal of lower premiums, the fact remains that the basic automobile liability policy undertakes to defend and indemnify an insured charged with automobile negligence. There is no suggestion of any statistical evidence that the insurance industry would recalculate and either lower or stabilize premiums for liability coverage if it were relieved of those policy obligations based on the fortuity of the non-insurance status of the victim of its insured's negligence. The goal of prompt payment of economic damages by one's own insurer is not implicated at all by the statute since the uninsured driver has no policy to which he can look for PIP coverage. The further goal is protection of the public by compulsory insurance. While we do not intend to minimize either the significance of that goal or the culpability of an uninsured driver in failing to comply with his insurance obligation, it is clear that to a considerable extent, that goal may be reached by the alternative route of the uninsured motorist protection (UM) coverage mandated by N.J.S.A. 17:28-1.1. From an overall industry point of view, rather than from the point of view of an individual insurer on an individual policy, it is difficult to see how premiums would be ultimately affected by whether an insurer pays a claim under its liability coverage or under its UM coverage. The fourth goal, encouraging compliance by automobile owners with their insurance obligations, appears, as well, to be little, if it at all, advanced by the absolute bar. If loss of economic damages does not provide adequate inducement, it is difficult to conclude that loss of noneconomic damages otherwise meeting the verbal threshold would have greater effect. Finally, we fail to see how any of the legislative goals would be advanced at all if the tortfeasor himself were also uninsured.
Not only do the legislative no-fault goals appear to be minimally advanced by the absolute bar, if advanced at all, but the absolute bar also contravenes other and perhaps overriding public policy concerns. Our common law has, for centuries, been predicated upon protecting the victim of another's wrongful or negligent conduct by requiring the tortfeasor to respond in damages. The immunity the absolute bar confers upon tortfeasors runs counter to those foundational principles of common law that are based upon the liability to respond in damages to those whom one injured by his negligent conduct-to say nothing of an intentionally wrongful act. To confer that immunity on tortfeasors who have no other status warranting an immunity is offensive to common-law tradition. Even more offensive is conferring *153 that immunity on an uninsured tortfeasor, who is as culpable in failing to comply with his insurance obligations as is the uninsured victim. And particularly offensive to public policy is conferring that immunity on drunk drivers.
In sum, an injured uninsured driver already suffers a severe penalty by losing any right he might have had to recover economic damages subject to PIP coverage. To deny an uninsured driver who is seriously injured any opportunity to recover non-economic damages from the tortfeasor seems to us to constitute an extreme penalty that is not offset by any reasonable advantage to the public or to the policy concerns on which no-fault legislation is based. That denial is, consequently, arbitrary and unsustainable.
We are also satisfied that the absolute bar violates principles of equal protection. To begin with, we recognize that the federal test for an asserted Fourteenth Amendment equal-protection violation involves a three-tiered standard dependent on the nature of the right involved and the persons affected, namely the strict-scrutiny test when the statute in question affects a fundamental right or a suspect class, the intermediate-scrutiny test when it involves a semi-suspect class, and the rational-basis test in all other cases. See, e.g., Drew Associates of NJ, LP v. Travisano, supra, 122 N.J. at 258, 584 A.2d 807. The New Jersey Constitution does not expressly guarantee equal protection of the laws. Rather, that protection has been implied as inherent in the general due process guarantees of Article I, paragraph l. Asserted violations of the protection, moreover, are tested not by the federal three-tiered approach but rather by a balancing test in which the court considers "the nature of the affected right, the extent to which governmental restriction intrudes upon it, and the public need for the restriction." Greenberg v. Kimmelman, supra, 99 N.J. at 567, 494 A.2d 294 (1985). Although that is, in effect, closely akin to the federal rational-relation test, see American Fire & Cas. Co. v. N.J. Dep't of Ins., 256 N.J.Super. 423, 428, 607 A.2d 196 (App.Div.1992), our courts have nevertheless recognized that the New Jersey test may, in particular circumstances, provide greater individual protection than the federal test. See, e.g., Barone v. Dep't of Human Services, 107 N.J. 355, 368, 526 A.2d 1055 (1987). We apply the New Jersey test here.
The classification of uninsured drivers as a class subject to disparate legislative treatment is prima facie unobjectionable. The question, rather, is whether the burden imposed on that class by the legislative action, considering its magnitude, is justified by the public need. Cf. Planned Parenthood v. Farmer, 165 N.J. 609, 632, 762 A.2d 620 (2000) (emphasizing the nature of the burden imposed upon the class). We conclude that there is no adequate justification for the absolute bar for the reasons we have already expressed.
In terms of classification, we also point out that the class on which the bar is imposed does not include all uninsured drivers. As held by Mody v. Brooks, supra, 339 N.J.Super. 392, 400-401, 772 A.2d 21 (App.Div.2001), the class of uninsured drivers who seek only property damage is not barred from recovery. There are thus two discrete classes of uninsured driver created by the Legislature, the class of those uninsured drivers who are victims of property damage at the hands of the tortfeasor and the class of uninsured drivers who are victims of serious personal injury at the hands of the tortfeasor. Only the class of victims suffering serious personal injury is barred. We agree with Judge Alley's parsing of N.J.S.A. 39:6A-4.5 in Mody. And we find it entirely arbitrary for the Legislature to permit a cause of action by a member of the class of uninsured *154 drivers seeking property damage, while prohibiting an uninsured driver from pursuing any cause of action for serious personal injury rather than only qualifying or conditioning the right of action. We can perceive no legitimate legislative policy advanced by that disparate treatment nor any rational basis justifying it. To the contrary, in our view it is irrational to permit an uninsured driver to seek recovery for a dented fender but to bar him from seeking any recovery at all for a catastrophic injury. For that reason alone, we are satisfied that N.J.S.A. 39:6A-4.5a constitutes a denial of equal protection.
The order denying defendants' motion for summary judgment is affirmed.
NOTES
[1] The statute was amended in 1998 as part of AICRA, and there was some concern in the trial court as to whether the 1997 version or the 1998 version applied. For purposes of the issue before us, both versions are of identical import.
[2] The Cost Containment Act, in lieu of the $200 threshold, permitted the insured to choose between that threshold and, for a smaller premium, a $1,500 threshold.
[3] We are unable to locate any legislative history illuminating the adoption of this amendment.