174 N.J. Super. 455 (1980)
416 A.2d 972
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MARK W. GRANEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 3, 1980.
Decided June 19, 1980.
*456 Stephen J. Boyle, for appellant.
John J. Degnan, Attorney General, for respondent (Keith M. Endo, Deputy Attorney General, of counsel and on the brief).
Before Judges MATTHEWS, ARD and POLOW.
The opinion of the court was delivered by POLOW, J.A.D.
Defendant appeals from the trial court's determination that N.J.S.A. 39:3-40, which mandates a 45-day jail term for a driver on the revoked list who is involved in an accident resulting in personal injury, applies where only the unlicensed driver himself suffers injuries. The underlying facts are not in dispute. On September 11, 1979 defendant was driving a vehicle which left the road and struck a building. Personal injuries were sustained by defendant. As a result he was charged with driving while intoxicated, careless driving, leaving the scene of an accident and driving while his license was revoked. At the municipal court hearing the drunken driving and careless driving charges were dismissed and defendant entered guilty pleas to leaving the scene of the accident and driving while on the revoked list. It was stipulated that only defendant himself received personal injuries.
*457 The municipal court judge reluctantly concluded that N.J.S.A. 39:3-40 mandates a minimum 45-day jail term because defendant was involved in an accident resulting in personal injury as a driver on the revoked list. Hence, the mandatory minimum 45-day jail term was imposed. With consent of the prosecutor, defendant was permitted to serve his sentence on weekends. The conviction and sentence were affirmed on trial de novo in the Law Division.
N.J.S.A. 39:3-40 provides:
No person to whom a driver's license has been refused or whose driver's license or reciprocity privilege has been suspended or revoked, or who has been prohibited from obtaining a driver's license, shall personally operate a motor vehicle during the period of refusal, suspension, revocation, or prohibition.
No person whose motor vehicle registration has been revoked shall operate or permit the operation of such motor vehicle during the period of such revocation.
A person violating any provision of this section shall be fined not less than $200.00 nor more than $1,000.00, or be imprisoned in the county jail for not more than 6 months, or both provided, that if while operating a vehicle in violation of this section, such person is involved in an accident resulting in personal injury, the punishment shall include imprisonment for not less than 45 days. [Emphasis supplied]
Defendant argues that the underlined portion of the statute applies only when the violator is involved in an accident which results in personal injury to someone else. In support thereof, he refers to legislative history and interprets the mandatory jail provisions as being part of a bill intended to keep the unsatisfied claim and judgment fund solvent. Since only persons other than the driver could claim under the fund, defendant reasons that the mandatory jail provisions were intended to apply only when the unlicensed driver injured a potential claimant. He also seeks support for his contention in the fact that the Legislature has decriminalized suicide.
We have previously had occasion to construe the statute in question. In State v. Pickens, 124 N.J. Super. 193 (App.Div. 1973), certif. den. 63 N.J. 581 (1973), defendant had operated his motor vehicle while his license was revoked and was involved in an accident resulting in injuries to himself and the other driver. As required by N.J.S.A. 39:3-40, the trial court imposed a 45-day jail term. On appeal defendant argued that the statute was *458 unconstitutional because it imposed criminal penalties for a civil wrong and denied due process because it was vague. In rejecting both arguments we gave consideration to the legislative intent and concluded that the purpose of the statute was punishment and deterrence to the end that the public be protected; that the gravamen of the offense is driving on the revoked list and that the "fact that an accident occurs and injury results is an aggravating circumstance clearly recognized by the Legislature and correspondingly providing for a harsher punishment." Id. at 195-196. However, we specifically declined to consider whether the mandatory penalty applied when the driver was not at fault or when he alone sustained injury, because those particular facts were not involved in the case. Id. at 196.
In State v. Fearick, 132 N.J. Super. 165 (App.Div. 1975), aff'd 69 N.J. 32 (1976), defendant, whose license had been suspended, was not responsible for the accident. The County Court judges did not impose a jail term but we held that the statute mandated incarceration and reversed. Defendant's argument that the Legislature did not intend incarceration where the individual was not at fault was rejected based upon the following rationale:
The statute is designed to deter persons whose driver's licenses have been suspended or revoked from driving upon the public highways of the State. Protection of the public is the paramount consideration. It is not accurate to say that the Legislature has chosen to inflict punishment upon blameless individuals. Rather, the Legislature has chosen to recognize the occurrence of an accident in which someone is injured as an aggravating circumstance which justified the imposition of a greater sanction. [132 N.J. Super. at 168-169, citation omitted]
We also rejected defendant's argument that the statute violates due process and equal protection because:
It is not unreasonable to conclude that the punishment of all persons who are involved in accidents resulting in personal injuries while driving at a time when their licenses are suspended or revoked will have a tendency to deter persons whose licenses are suspended or revoked from driving. [Id. at 169]
On appeal the Supreme Court affirmed, adding the following pertinent comment:
In view of the unambiguous language used in the statute evidencing the legislative goal to protect the public, as well as the suspended driver himself, by removing presumptively unsafe drivers from the road, defendant's contention would lead to an unworkable, absurd and anomalous result [citation omitted]. [69 N.J. at 37; emphasis supplied]
*459 Hence, the primary function of the mandatory jail term is to deter individuals whose licenses have been suspended from driving. Id. at 38-39.
A compelling analogy can be found in the history of legislative and judicial interaction in the construction and interpretation of the statute involving leaving the scene of an accident, N.J.S.A. 39:4-129(a) and (b). Prior to 1966 that statute required the "driver of any vehicle knowingly involved in an accident resulting in injury ... to a person or damage to property" to stop, give his name and address and exhibit his license and registration to anyone else involved or to a police officer. In State v. Patterson, 47 N.J. 450 (1966), the driver who left the scene had been involved in a one-car collision with a tree. The damage to the tree was minimal but substantial damage was sustained by defendant's own vehicle. The court construed the statute as not applicable where only defendant's vehicle sustained damage. It concluded that the Legislature had intended the phrase "damage to property" to mean damage to property of another. Id. at 454-455. Within one year the Legislature amended N.J.S.A. 39:4-129 to make it clear that the statutory meaning of the phrase "property damage" includes damage to property of the violator himself. This quick response by the Legislature to the Patterson decision indicates an intent to include injuries sustained by the violator himself within the scope of similar language providing for mandatory punishment under the traffic regulation statute.
We are fully satisfied that the primary statutory purpose in enacting the provision in question was to ensure the safety of the public on the highways. There is no support for defendant's theory that the legislative concern extends to all members of the public except the violator himself. Such an interpretation would require an illogical distortion of the plain language of the statute. "[T]he State having proved the prescribed statutory elements, the courts have no alternative but to impose the penalty called for therein." State v. Fearick, supra 69 N.J. at 38.
Affirmed.