842 A.2d 125

JORGE O. CAVIGLIA AND MABEL BRUN CAVIGLIA, PLAIN-
TIFFS–RESPONDENTS, v. ROYAL TOURS OF AMERICA AND
HECTOR MUNDO, DEFENDANTS–APPELLANTS, AND ABC
CORPORATION, XYZ COMPANY, JOHN DOE NOS. 1–3 (FICTI-
TIOUS NAMES FOR INDIVIDUALS OR BUSINESS ENTITIES
INCORPORATED IN OR AUTHORIZED TO DO BUSINESS IN
THE STATE OF NEW JERSEY), DEFENDANTS.

Argued October 21, 2003—Decided February 19, 2004.

462

*Floyd G. Cottrell* argued the cause for appellants (*Newman Fitch Altheim Myers*, attorneys; *Kalliopi P. Kousis*, on the brief).

*Norberto H. Yaconoi* and *Kenneth C. Marano* argued the cause for respondents (*Mr. Yacono*, attorney).

*Susan Stryker* argued the cause for amici curiae Insurance Council of New Jersey, Alliance of American Insurers, American Insurance Association and National Association of Independent Insurers (*Sterns & Weinroth*, attorneys; *Ms. Stryker* and *Mitchell A. Livingston*, on the brief).

*Raymond R. Chance, III*, Deputy Attorney General, argued the cause for amicus curiae State of New Jersey (*Peter C. Harvey*, Attorney General of New Jersey, attorney; *Patrick DeAlmeida*, Deputy Attorney General, of counsel; *Prince F. Kessie*, Deputy Attorney General, on the brief).

*Gerald H. Baker* submitted a brief on behalf of amicus curiae The Association of Trial Lawyers of America–New Jersey (*Baker, Garber, Duffy & Pedersen*, attorneys).

Justice ALBIN delivered the opinion of the Court.

Plaintiff Jorge O. Caviglia owned and operated an uninsured motor vehicle at the time he suffered injuries in an automobile accident. Although faultless in the accident, plaintiff was exposed to a mandatory fine of between $300 and $1,000, a period of community service, and a one-year license forfeiture because of his failure to carry automobile liability insurance. *N.J.S.A:* 39:6B–2. Because his vehicle was uninsured, plaintiff also was barred from suing the tortfeasor for recovery of his economic injuries. *N.J.S.A.* 39:6A–4.5a; *Monroe v. City of Paterson*, 318 *N.J.Super.* 505, 510, 723 *A.*2d 1266 (App.Div.1999). Plaintiff does not dispute the power of the State to impose quasi-criminal penalties or to deny the recovery of economic damages as a consequence of his driving an uninsured vehicle. Plaintiff only challenges the constitutionality of that part of *N.J.S.A.* 39:6A–4.5a that precludes him from suing the tortfeasor for noneconomic damages, such as pain

and suffering. He claims that the statutory bar violates federal and state constitutional guarantees of equal protection and due process. We are satisfied that the Legislature did not exceed its constitutional authority in enacting *N.J.S.A.* 39:6A–4.5a.

I.

On October 13, 1997, plaintiff was driving his Ford Tempo in North Bergen, with his wife, Mabel Brun, in the passenger's seat, when a bus operated by defendant Hector Mundo and owned by defendant Royal Tours of America, Inc. crossed over into plaintiff's lane of traffic, causing a collision. Plaintiff suffered serious injuries to his head, neck, back, and jaw as a result of the accident. Mabel also sustained personal injuries. On October 8, 1999, plaintiff and his wife filed suit for personal injury and property damage against defendants. Mabel settled her claims. In answers to interrogatories, plaintiff asserted that his injuries from the accident have prevented him from performing normal daily activities and have caused him severe pain and suffering.

Before the accident, for reasons not disclosed in the record, plaintiff's automobile insurance policy had been cancelled. Because of plaintiff's uninsured status at the time of the accident, defendants moved for summary judgment arguing that *N.J.S.A.* 39:6A–4.5a barred plaintiff's suit. That statute denies a "cause of action for recovery of economic or noneconomic loss" to the driver of an uninsured vehicle who is injured in an automobile accident. *Ibid.*

The trial court granted defendants' motion for summary judgment, but on reconsideration reversed itself and reinstated plaintiff's claim. The court concluded that *N.J.S.A.* 39:6A–4.5a's bar of a right to recover noneconomic damages by an uninsured, injured plaintiff violated the equal protection and due process guarantees of the Federal and State Constitutions. The Appellate Division affirmed, finding that the statute's absolute bar of a cause of action for noneconomic damages to uninsured drivers seriously injured in automobile accidents did not bear "a real and substan-

tial relationship" to the Legislature's no-fault objectives and arbitrarily discriminated against that class of drivers. *Caviglia v. Royal Tours of Am.*, 355 *N.J.Super.* 1, 9, 809 *A.*2d 146 (2002).

We granted defendants' motion for leave to appeal. 175 *N.J.* 544, 816 *A.*2d 1046 (2003). We now reverse.

## II.

In resolving the constitutional challenge to *N.J.S.A.* 39:6A–4.5a, we begin with a short primer in New Jersey's automobile liability insurance laws. All owners of motor vehicles registered or principally garaged in New Jersey are required to maintain minimum amounts of standard, basic, or special liability insurance coverage for bodily injury, death, and property damage caused by their vehicles. *N.J.S.A.* 39:6B–1. That statute is intended to ensure that automobile accident victims are not left without the means to recover financially for their injuries from a judgment-proof tortfeasor. *State v. McCourt*, 131 *N.J.Super.* 283, 286, 329 *A.*2d 577 (App.Div.1974). Every policy also must provide a package of "personal injury protection [PIP] benefits" that guarantees, without regard to fault, medical expense benefits to the named insured and his family household members in the event they suffer bodily injury in an automobile accident. *N.J.S.A.* 39:6A–4.[1] This system of first-party self-insurance through PIP benefits was enacted pursuant to the New Jersey Automobile Reparation Reform Act (the No Fault Act) and is commonly referred to as no-fault insurance. *L.* 1972, *c.* 70; *N.J.S.A.* 39:6A–1 to –35; *see also Fu v. Fu*, 160 *N.J.* 108, 121, 733 *A.*2d 1133 (1999) (describing transition from fault-based system to system of first-party coverage).

The No Fault Act was intended to serve as the exclusive remedy for payment of out-of-pocket medical expenses arising from an automobile accident. *Roig v. Kelsey*, 135 *N.J.* 500, 503, 512, 641 *A.*2d 248 (1994). Moreover, the act contained restrictions

---

[1] The insured must also provide PIP benefits for certain pedestrians and permissive users. *N.J.S.A.* 39:6A–4.

on the right to sue. For example, an injured driver with a standard liability policy was barred from suing the tortfeasor for the very PIP benefits reimbursable through his own insurance carrier. *Sotomayor v. Vasquez*, 109 *N.J.* 258, 261–62, 536 *A.*2d 746 (1988). The act also precluded an injured, insured motorist or passenger from suing an insured tortfeasor for economic or non-economic damages (pain and suffering) unless the injury was of a permanent nature or the medical costs of treatment of the injury were valued at $200 or greater. *Oswin v. Shaw*, 129 *N.J.* 290, 295–96, 609 *A.*2d 415 (1992) (citing *L.* 1972, *c.* 70, § 8). The restriction on the right to sue in those instances was deemed the trade-off for lower premiums and prompt payment of medical expenses. *Roig, supra,* 135 *N.J.* at 511–12, 641 *A.*2d 248.

A common thread throughout the evolution of the no-fault scheme has been the periodic inclusion of additional conditions on the right to sue in automobile accident cases. The No Fault Act was enacted in response to a long and widely held belief that the traditional court-oriented "fault" system had failed badly in providing prompt compensation for accident victims, whose medical bills and other accident-related costs remained unpaid for years while their lawsuits lumbered through an overburdened court system. *Roig, supra,* 135 *N.J.* at 502–03, 641 *A.*2d 248; *Gambino v. Royal Globe Ins. Cos.,* 86 *N.J.* 100, 106–07, 429 *A.*2d 1039 (1981). The Legislature had four objectives in reforming the automobile accident tort system: (1) providing benefits promptly and efficiently to all accident injury victims (the *reparation* objective); (2) reducing or stabilizing the cost of automobile insurance (the *cost* objective); (3) making insurance coverage readily available for automobile owners (the *availability* objective); and (4) streamlining judicial procedures involved in third-party claims (the *judicial* objective). *Gambino, supra,* 86 *N.J.* at 105–06, 429 *A.*2d 1039 (citing Automobile Insurance Study Commission, *Reparation Reform for New Jersey Motorists* at 7 (December 1971)).

Although the No Fault Act may have been successful in meeting its first goal of providing speedy recovery of medical costs, lost

wages, and other such expenses[2] without making the victim await the outcome of protracted litigation, the act fell short of its other objectives. *Oswin, supra,* 129 *N.J.* at 296, 609 *A.*2d 415; *Rybeck v. Rybeck,* 141 *N.J.Super.* 481, 492, 358 *A.*2d 828 (Law Div.1976), *appeal dismissed,* 150 *N.J.Super.* 151, 375 *A.*2d 269 (App.Div.), *certif. denied,* 75 *N.J.* 30, 379 *A.*2d 261 (1977). The act failed to curb increasing insurance costs and to relieve congestion of court calendars. *Rybeck, supra,* 141 *N.J.Super.* at 492, 358 *A.*2d 828.

In the decades that followed the birth of No Fault, the Legislature grappled with the intractable problem of the spiraling cost of automobile insurance. *See Oswin, supra,* 129 *N.J.* at 296, 609 *A.*2d 415 (describing Legislature's attempts to solve problem of rising insurance rates). In 1984, the Legislature comprehensively amended the No Fault Act by passage of the New Jersey Automobile Insurance Freedom of Choice and Cost Containment Act (the Cost Containment Act) for the purpose of making automobile insurance more affordable and available to more members of the public. *L.* 1983, *c.* 362; *Oswin, supra,* 129 *N.J.* at 295–96, 609 *A.*2d 415. The Cost Containment Act gave motorists the option of reducing insurance premiums by increasing deductibles and reducing benefits.[3] *Oswin, supra,* 129 *N.J.* at 296, 609 *A.*2d 415. The new legislation also enlarged the class of people to be excluded from PIP coverage entirely. *Parkway Ins. Co. v. New Jersey Neck & Back,* 330 *N.J.Super.* 172, 180, 748 *A.*2d 1221 (Law

---

2 PIP benefits under the original No Fault Act mandated five categories of coverage including medical expenses, income continuation, essential services, survivor benefits (currently called death benefits) and funeral benefits, *see L.* 1972, *c.* 70, § 4; however, under the current version of the statute, insureds may opt to exclude all but medical benefits from their policy. *N.J.S.A.* 39:6A–4.3b.

3 Specifically, the Cost Containment Act "introduced" the idea of tort options; insureds were allowed to "choose between two monetary thresholds for soft-tissue injuries, either $200 or $1,500." *Oswin, supra,* 129 *N.J.* at 296, 609 *A.*2d 415 (citing *L.* 1983, *c.* 362, § 14). As then-Governor Kean's press release touting passage of the act noted, "[t]he policyholder who selects the $200 threshold will pay a substantially higher premium than those selecting the $1,500 threshold." Office of the Governor, Press Release (Oct. 4, 1983).

Div.1998). *N.J.S.A.* 39:6A–7 denied PIP benefits to those persons whose intentional or criminal conduct contributed to their own personal injuries and to those owners and registrants of New Jersey vehicles who failed to maintain PIP coverage. *L.* 1983, *c.* 362, § 10. Denying an uninsured driver the right to recover medical costs and lost wages that would have been reimbursable if the driver had PIP coverage was a part of the larger goal of controlling the cost of insurance to the public. *Parkway Ins. Co., supra,* 330 *N.J.Super.* at 180, 748 *A.*2d 1221 (noting Senate statement that restrictions were "designed to tighten statutory eligibility requirements for personal injury protection coverage so as to comport with the original intent of the no fault law").

In 1985, the Legislature enacted *N.J.S.A.* 39:6A–4.5, which imposes restrictions on the right of an uninsured driver to sue for noneconomic damages. That statute originally provided:

> Any person who, at the time of an automobile accident *resulting in injuries to that person,* is required but fails to maintain medical expense benefits coverage mandated by [*N.J.S.A.* 39:6A–4] ... shall:
>
> a. For the purpose of filing an action for recovery of noneconomic loss, as defined in [*N.J.S.A.* 39:6A–2], be subject to the tort option specified in [*N.J.S.A.* 39:6A–8b];
>
> b. In the event of a recovery for noneconomic loss pursuant to an arbitration award, judicial judgment or voluntary settlement, be subject to the setoff option as set forth in [*N.J.S.A.* 39:6A–4.3c], except that the amount of the setoff shall be payable to the New Jersey Automobile Insurance Risk Exchange established pursuant to [*N.J.S.A.* 39:6A–21].
>
> [*L.* 1985, *c.* 520, § 14 (current version at *N.J.S.A.* 39:6A–4.5) (emphasis added).]

The statute did not restrict entirely an injured, uninsured motorist from suing for noneconomic damages, but conditioned that right on his meeting the $1,500 medical-expense threshold. *L.* 1985, *c.* 520, § 14. At that time, the $1,500 medical-expense threshold was the highest monetary threshold option available to insureds in exchange for lower premiums. *L.* 1985, *c.* 520, § 15. The uninsured driver, thus, had to satisfy the most onerous monetary threshold before he was entitled to pursue a suit for noneconomic injuries.

In 1988, the Legislature amended *N.J.S.A.* 39:6A–4.5 by deleting subsection b and by subjecting uninsured motorists seeking noneconomic damages to *N.J.S.A.* 39:6A–8a's new verbal threshold as a condition to filing suit. *L.* 1988, *c.* 119, §§ 4, 6. The verbal threshold required a more exacting standard of proving death or a severe bodily injury [4] and applied to all insured motorists seeking recovery for noneconomic losses who did not select an alternative option. That alternative option did not require the insured to meet a monetary threshold or prove bodily injury, but instead gave him a right to unrestricted recovery for noneconomic damages in exchange for higher premiums. *L.* 1988, *c.* 119, §§ 4, 6–7; *Oswin, supra,* 129 *N.J.* at 297, 609 *A.*2d 415; *Jacques v. Kinsey,* 347 *N.J.Super.* 112, 126, 788 *A.*2d 932 (Law Div.2001). Requiring the uninsured motorist to meet the verbal threshold as a prerequisite to pursuing a lawsuit for personal injuries was an "important barrier designed to keep insurance costs down." *Jacques, supra,* 347 *N.J.Super.* at 125–26, 788 *A.*2d 932.

In 1997, the Legislature comprehensively amended *N.J.S.A.* 39:6A–4.5 to bar three classes of people from suing for personal injuries in automobile accident cases: (a) persons who operate automobiles without insurance; (b) persons who drive while under the influence of alcohol or drugs; and (c) persons who act with the intent to injure others while driving. The statute provides:

a. Any person who, at the time of an automobile accident resulting in injuries to that person, is required but fails to maintain medical expense benefits coverage mandated by [*N.J.S.A.* 39:6A–4] *shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident while operating an uninsured automobile.*

---

[4] The injuries that must be sustained to vault the current verbal threshold include bodily injury resulting in:

death; dismemberment; significant disfigurement or significant scarring; displaced fractures; loss of a fetus; or a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment.

[*N.J.S.A.* 39:6A–8a.]

b. Any person who is convicted of, or pleads guilty to, operating a motor vehicle in violation of [*N.J.S.A.* 39:4–50, –50.4a], or a similar statute from any other jurisdiction, in connection with an accident, shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of the accident.

c. Any person acting with specific intent of causing injury to himself or others in the operation or use of an automobile shall have no cause of action for recovery of economic or noneconomic loss sustained as a result of an accident arising from such conduct.

[*L.* 1997, *c.* 151, § 13 (current version at *N.J.S.A.* 39:6A–4.5) (emphasis added).[5]]

Only subsection (a) of the amended statute forms the basis of the appeal in this case.

*N.J.S.A.* 39:6A–4.5a advances a policy of cost containment by ensuring that an injured, uninsured driver does not draw on the pool of accident-victim insurance funds to which he did not contribute. *See Rojas v. DePaolo,* 357 *N.J.Super.* 115, 119, 813 *A.*2d 1288 (Law Div.2002) (noting section 4.5's "evident" purpose of reducing or stabilizing insurance prices). The legislation thus gives the uninsured driver a very powerful incentive to comply with the compulsory insurance laws: obtain automobile liability insurance coverage or lose the right to maintain a suit for both economic and noneconomic injuries.

### III.

The Fourteenth Amendment to the United States Constitution guarantees that no state may "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." *U.S. Const.* amend. XIV, § 1. Those fundamental rights also are protected under our State Constitution. *N.J. Const.* art. I, ¶ 1.

---

5 In a 1998 technical amendment to the statute, the Legislature clarified that persons who fail to maintain either standard or basic medical expense benefits coverage also are barred from filing suit for personal injuries. *L.* 1998, *c.* 21, § 8. After this appeal was filed, the Legislature made a similar amendment to section 4.5a, *L.* 2003, *c.* 89, § 47, to clarify that persons who fail to maintain standard, basic, or special medical expense benefits coverage are subject to the suit preclusion of section 4.5a.

Although Article I, Paragraph 1 does not contain the express terms "equal protection" or "due process," we have construed the expansive language of that provision as guaranteeing those fundamental constitutional rights. *Greenberg v. Kimmelman,* 99 *N.J.* 552, 568, 494 *A.*2d 294 (1985); *see also Sojourner A. v. New Jersey Dep't of Human Servs.,* 177 *N.J.* 318, 332, 828 *A.*2d 306 (2003).[6] Under both constitutions, a statute is invalid on substantive due process grounds if it "seeks to promote [a] state interest by impermissible means," and is invalid on equal protection grounds when it does not apply "evenhandedly" to similarly situated people. *Greenberg, supra,* 99 *N.J.* at 562, 494 *A.*2d 294. Analyses under equal protection and due process "proceed[ ] along parallel lines," and "overlap" to some degree. *Id.* at 569, 494 *A.*2d 294.

A state statute generally does not run afoul of federal substantive due process protections if the statute "reasonably relates to a legitimate legislative purpose and is not arbitrary or discriminatory." *Id.* at 563, 494 *A.*2d 294 (citing *Nebbia v. New York,* 291 *U.S.* 502, 537, 54 *S.Ct.* 505, 516, 78 *L.Ed.* 940, 957 (1934)). If the statute is founded on some conceivable rational basis to promote a public purpose, it will survive constitutional scrutiny. *Ibid.* A more exacting standard applies to a statute that infringes on a fundamental right. *See Roe v. Wade,* 410 *U.S.* 113, 155, 93 *S.Ct.* 705, 728, 35 *L.Ed.*2d 147, 178 (1973) (requiring compelling state interest); *Moore v. East Cleveland,* 431 *U.S.* 494, 499, 97 *S.Ct.* 1932, 1936, 52 *L.Ed.*2d 531, 537 (1977).

When evaluating substantive due process and equal protection challenges under the New Jersey Constitution, this Court applies a balancing test. *Sojourner, supra,* 177 *N.J.* at 332, 828 *A.*2d 306; *Greenberg, supra,* 99 *N.J.* at 567, 494 *A.*2d 294; *Barone*

---

[6] Article I, Paragraph 1 provides that, "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness." *N.J. Const.* art. I, ¶ 1.

*v. Dep't of Human Servs., Div. of Med. Assistance & Health Servs.*, 107 *N.J.* 355, 368, 526 *A.*2d 1055 (1987). That test weighs the "nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." *Greenberg, supra,* 99 *N.J.* at 567, 494 *A.*2d 294; *see also Barone, supra,* 107 *N.J.* at 368, 526 *A.*2d 1055. We require that the means selected by the Legislature "bear a real and substantial relationship to a permissible legislative purpose." *Taxpayers Ass'n of Weymouth Tp. v. Weymouth Tp.,* 80 *N.J.* 6, 44, 364 *A.*2d 1016 (1976), *cert. denied,* 430 *U.S.* 977, 97 *S.Ct.* 1672, 52 *L.Ed.*2d 373 (1977) (citing *Nebbia, supra,* 291 *U.S.* at 525, 54 *S.Ct.* at 505, 78 *L.Ed.* at 950); *see also Katobimar Realty Co. v. Webster,* 20 *N.J.* 114, 123, 118 *A.*2d 824 (1955).

 In finding that *N.J.S.A.* 39:6A–4.5a violated federal and state constitutional guarantees of substantive due process, the Appellate Division held that the absolute bar to recovery of noneconomic damages was arbitrary and irrational. At the heart of the Appellate Division's analysis was its conclusion that *N.J.S.A.* 39:6A–4.5a abrogated plaintiff's common law right to pursue a cause of action for personal injuries suffered in an automobile accident. *Caviglia, supra,* 355 *N.J.Super.* at 4–5, 8, 809 *A.*2d 146. We see the issue differently.

Section 4.5a did nothing more than subject the right to sue for noneconomic damages in an automobile accident case to the condition that the injured motorist secure liability insurance. Preconditions on the filing of lawsuits are a common feature of our laws. A few examples will illustrate the point. The Legislature requires an injured plaintiff to comply with the statute of limitations as a condition to filing a lawsuit. *N.J.S.A.* 2A:14–2. Under the New Jersey Tort Claims Act, a plaintiff must serve notice of an intention to sue a public entity or public employee within ninety days of the accrual date of the cause of action. *N.J.S.A.* 59:8–8. The failure to do so may result in dismissal of the lawsuit. *N.J.S.A.* 59:8–8a. In professional malpractice cases, a plaintiff must serve on a defendant an affidavit of merit no later than 120 days after

the filing of an answer; otherwise the complaint is subject to dismissal with prejudice. *N.J.S.A.* 2A:53A–26 to –29; *Ferreira v. Rancocas Orthopedic Assoc.*, 178 *N.J.* 144, 146, 836 *A.2d* 779 (2003). Although those are examples of procedural preconditions to the filing of a lawsuit and, therefore, are of a different kind than the condition that a driver be insured to pursue an action for personal injuries, the point remains that the Legislature has the authority to place restrictions on the right to sue.

There are a number of restrictions on the right to sue for personal injuries in automobile accident cases. An injured motorist subject to the verbal threshold must satisfy that threshold and serve on a defendant a physician's certification attesting to the nature of his injuries. *N.J.S.A.* 39:6A–8a. A motorist may not pursue a personal injury action if he was intoxicated at the time of the accident. *N.J.S.A.* 39:6A–4.5b. That bar also extends to any driver who suffered injuries while attempting to cause harm with his automobile at the time of the accident. *N.J.S.A.* 39:6A–4.5c.

One public policy rationale behind *N.J.S.A.* 39:6A–4.5 is to deter drunk driving, the intentional use of automobiles as weapons, and drivers from operating uninsured vehicles. In furtherance of that deterrence rationale, the uninsured driver forfeits the right to sue by failing to comply with a necessary precondition to filing suit: maintaining insurance coverage. A motorist does not have a fundamental right to operate an automobile without liability insurance.

The Appellate Division agreed with plaintiff that an absolute bar to recovery of noneconomic damages "runs contrary" to the original and primary impetus for New Jersey's No–Fault legislation: providing speedy recovery for plaintiff's losses resulting from automobile accidents. The Legislature, however, in fashioning methods to promote the financial security of the no-fault system was not limited to its early objectives. As the No Fault Act has evolved, the goals of increased insurance availability and cost-containment have become at least as important as the goal of reparation. *See Oswin, supra,* 129 *N.J.* at 296, 609 *A.2d* 415

(noting that Legislature's focus in passing Cost Containment Act and subsequent creation of tort options was concern over controlling rising cost of insurance); *Parkway Ins. Co., supra,* 330 *N.J.Super.* at 180, 748 *A.*2d 1221 (noting that Cost Containment Act was reaction to original No Fault Act's failure to achieve lower insurance rates). That the experience of our No–Fault scheme in New Jersey has led the Legislature to redirect its objectives does not render acts in furtherance of current goals constitutionally infirm.

■ The Legislature is empowered to pass enactments that create incentives to coerce compliance with the law. *See, e.g., State v. Graney,* 174 *N.J.Super.* 455, 457, 459, 416 *A.*2d 972 (App.Div.1980) (stating that Legislature may punish those who drive with suspended or revoked licenses, even though faultless in causing accident, as means of deterrence). Our laws give uninsured drivers compelling reasons for obtaining automobile liability coverage. A person driving an uninsured vehicle is subject to a mandatory fine and a one-year license suspension. *N.J.S.A.* 39:6B–2. A second-time offender is subject to a jail term. *Ibid.* A person driving an uninsured vehicle is stripped of his rights to sue for economic damages. *N.J.S.A.* 39:6A–4.5a. Plaintiff has not suggested that the Legislature acted beyond its constitutional authority with those enactments; he only claims that the Legislature overstepped its bounds by denying the faultless and injured, uninsured driver the right to sue for noneconomic damages. It would be odd indeed for a plaintiff to possess a constitutional right to sue for noneconomic damages, but no such similar right to sue for economic damages. We see no justifiable distinction between the two categories of damages. The Legislature may place reasonable conditions on the right to seek recovery for both forms of damages.

The Appellate Division surmised that depriving an uninsured driver the right to sue for economic damages has not deterred people from driving without insurance. The panel further surmised that a person who did not obtain insurance when faced with

the denial of a right to sue for economic damages would not likely be persuaded to obtain insurance when faced with the denial of the right to sue for noneconomic damages.

■ We do not find any proof in the record to support those conclusions. There are an estimated 600,000 New Jersey drivers who operate their vehicles without insurance. Department of Banking and Insurance, Order No. A02–130 (Sept. 6, 2002). We cannot say that that number would not be greater without laws aimed at coercing compliance with our mandatory insurance laws. Moreover, a reasonable person engaging in a cost-benefit analysis might well be persuaded that the loss of the right to sue for noneconomic damages is too great a risk to bear for not obtaining insurance.[7] The Legislature may rely on rational intuition and simple logic in determining what laws will advance the public interest.

■ Judging whether a statute is effective is a matter for policymakers. *Hutton Park Gardens v. Town Council of West Orange*, 68 *N.J.* 543, 565, 350 *A.2d* 1 (1975); *State Farm Mut. Auto. Ins. Co. v. State*, 124 *N.J.* 32, 45, 590 *A.2d* 191 (1991). We do not pass judgment on the wisdom of a law or render an opinion on whether it represents sound social policy. *State Farm, supra,* 124 *N.J.* at 45, 590 *A.2d* 191. That is the prerogative of our elected representatives. We must confine our review to the constitutionality of the statute.

In 1976, in *Rybeck v. Rybeck, supra,* the trial court turned aside a constitutional challenge to the No Fault Act that was grounded in the argument that the act failed to achieve the success that had

---

[7] Empirical data suggests that a correlation exists between the severity of the penalty and a reduction in uninsured motorist noncompliance. Cassandra R. Cole et al., *The Uninsured Motorist Problem: An Investigation of the Impact of Enforcement and Penalty Severity on Compliance*, 19 *J. of Ins. Reg.* 633 (2001) (suggesting, based on results of study, that "higher fines are effective in reducing the noncompliance problem"). Such research is supportive of the Legislature's common sense conclusion that stiffer consequences for failure to carry insurance may encourage greater compliance with the law.

been promised by its proponents. 141 *N.J.Super.* at 493, 358 *A.*2d 828. Judge Richard Cohen addressing the limits of judicial power when passing on the constitutionality of legislation, stated:

> The Constitution does not forbid enactments of ill-fated legislation. It does not authorize retrospective judicial review of the sincerity of the proponents' presentation or the accuracy of the legislative fact-finding. An act is not invalid because it does not work very well. At the time of enactment the No Fault Act was reasonably seen as a sensible remedy for a set of real problems. That is sufficient to satisfy the constitutional requirement of due process of law. It does not matter that there may have been other methods of reform the Legislature might have chosen.

> [*Id.* at 492–93, 358 *A.*2d 828.]

 Legislatures are empowered to pass laws to meet the pressing social needs of the times, even if those laws seem to others ill-advised or later prove to be failures. Legislatures are entitled to experiment and explore means through which to advance public policy, provided there is a reasonable basis to support the legislation. *Williamson v. Lee Optical of Okla. Inc.,* 348 *U.S.* 483, 487–88, 75 *S.Ct.* 461, 464, 99 *L.Ed.* 563, 572 (1955) ("[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."); *Day–Brite Lighting, Inc. v. Missouri,* 342 *U.S.* 421, 423, 72 *S.Ct.* 405, 407, 96 *L.Ed.* 469, 472 (1952). Thus, we decline to second-guess the Legislature's common-sense reasoning that section 4.5a has the potential to produce greater compliance with compulsory insurance laws and, in turn, reduce litigation, and result in savings to insurance carriers and ultimately the consuming public.

 A legislative enactment is presumed to be constitutional and the burden is on those challenging the legislation to show that it lacks a rational basis. *Board of Educ. of Piscataway Tp. v. Caffiero,* 86 *N.J.* 308, 318, 431 *A.*2d 799 (1981), *appeal dismissed,* 454 *U.S.* 1025, 102 *S.Ct.* 560, 70 *L.Ed.*2d 470 (1981). We customarily grant great deference to the Legislature in its decisions governing the necessity and reasonableness of economic and social legislation. *Edgewater Inv. Assocs. v. Borough of Edgewater,* 103 *N.J.* 227, 235, 510 *A.*2d 1178 (1986). In this case, the Appellate

478

Division shifted the burden to the State to justify the constitutionality of the statute. The State, however, was not obligated to present statistical evidence to prove the soundness of the legislation. In the absence of a "sufficient showing" that the Legislature lacked factual support for its judgment, this Court will assume that the statute is based on "some rational basis within the knowledge and experience of the Legislature." *Burton v. Sills,* 53 *N.J.* 86, 95, 248 *A.*2d 521 (1968), *appeal dismissed,* 394 *U.S.* 812, 89 *S.Ct.* 1486 (Mem), 22 *L.Ed.*2d 748 (1969) (citation omitted).

Nevertheless, the arithmetic of this State's automobile liability insurance scheme is not difficult to compute. When fewer motorists purchase automobile insurance and more uninsured motorists receive payment on their claims for personal injuries, those who obey our compulsory insurance laws pay higher premiums. The Legislature may do more than ponder powerlessly such an inequitable equation. The Legislature may act to give motorists incentives to purchase insurance so that a greater pool of insurance proceeds will be available for all accident victims. Alternatively, it may bar the claims of those who fail to contribute to the system by obtaining insurance. We cannot say that this is an irrational approach towards stabilizing or decreasing insurance costs for those who comply with our insurance laws.

We need not address whether the abrogation of an entire cause of action would violate plaintiff's substantive due process rights because here we find that the Legislature did not do so. Rather, it placed a reasonable condition on the exercise of the right to sue for personal injuries in an automobile accident case. Placing such a condition bears a "real and substantial relationship" to the Legislature's no-fault goals. We uphold *N.J.S.A.* 39:6A-4.5a on due process grounds because the statute does not implicate a fundamental right and it is rationally related to, and suitably furthers, a legitimate state interest.

IV.

We also find that *N.J.S.A.* 39:6A-4.5a does not violate the equal protection rights of uninsured drivers under the Federal or

State Constitutions. Under the Federal Constitution, if a statute does not burden a "fundamental right" or differentiate between a "suspect" or "semi-suspect" class, it is evaluated under the less stringent rational basis review. *Barone, supra,* 107 *N.J.* at 364–65, 526 *A.*2d 1055; *Minnesota v. Clover Leaf Creamery Co.,* 449 *U.S.* 456, 461–66, 101 *S.Ct.* 715, 722–25, 66 *L.Ed.*2d 659, 667–70 (1981). As we previously stated, under our State Constitution, we apply a flexible balancing test that weighs the nature of the right, the extent of the governmental restriction on the right, and whether the restriction is in the public interest. *Right to Choose v. Byrne,* 91 *N.J.* 287, 308–09, 450 *A.*2d 925 (1982).

Applying those standards, we find no classification in violation of equal protection. Clearly, uninsured drivers do not belong to a class entitled to heightened protections under our Federal or State Constitutions. *See Barone, supra,* 107 *N.J.* at 365, 526 *A.*2d 1055 (concluding that poverty is not a suspect classification); *Harris v. McRae,* 448 *U.S.* 297, 299, 100 *S.Ct.* 2671, 2679, 65 *L.Ed.*2d 784 (1980) (same conclusion under Federal Constitution). Uninsured drivers are not similarly situated to insured drivers because uninsured drivers are in violation of the law, and their counterparts are not. Uninsured drivers, therefore, cannot expect to receive the same treatment.

Moreover, section 4.5a, as noted, serves the public welfare by promoting compliance with our compulsory insurance laws. The more drivers who purchase insurance, the more resources available to provide medical benefits to persons injured in accidents. Balancing the government's strong interest in enforcing its laws and the reasonable restriction placed on drivers who wish to pursue a personal injury action, we conclude that subjecting uninsured drivers to disparate legislative treatment is justified by the public need in having all drivers conform with the No Fault Act.

The Appellate Division found that section 4.5a violated equal protection because it barred uninsured drivers from recovering noneconomic damages, while permitting the same drivers to recov-

er property damages. The appellate panel followed *Mody v. Brooks*, 339 *N.J.Super.* 392, 400–01, 772 *A.2d* 21 (App.Div.2001), and construed section 4.5a as not precluding an uninsured's cause of action for property damage. The court then submitted that a statute that prohibits a lawsuit for noneconomic damages but not property damage is irrational. The Attorney General argues that economic damage includes property damage and is, therefore, barred by section 4.5a. That issue, however, is unresolved and has not been briefed or argued before this Court.[8]

Assuming, however, that *N.J.S.A.* 39:6A–4.5a did not bar an uninsured driver's suit for property damage, precluding recovery for other economic and noneconomic damages would still be a legitimate exercise of legislative power. The Legislature may have decided that the most powerful means to coerce an uninsured driver into complying with the law was to deny recovery for personal injuries. "If a statutory distinction has some reasonable basis, 'a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect.'" *Whitaker v. DeVilla*, 147 *N.J.* 341, 358, 687 *A.2d* 738 (1997) (quoting *Dandridge v. Williams*, 397 *U.S.* 471, 485, 90 *S.Ct.* 1153, 1161, 25 *L.Ed.2d* 491, 501 (1970)). Moreover, even if it was legislative oversight to allow an uninsured driver a recovery for property damage, the other means selected to advance the legislative goals are not necessarily invalid. Many statutes over time are improved by amendments that clarify legislative intent or plug statutory gaps that create inconsistencies. The test is not whether the statute is a perfect creation, but whether it is rational and furthers a legitimate state interest.

---

[8] Another Appellate Division panel has concluded that section 4.5a precludes an uninsured driver's suit for property damage. *See Rogers v. Carchesio*, 366 *N.J.Super.* 181, 840 *A.2d* 925 (App.Div.2004). That court noted that "economic loss" is defined in *N.J.S.A.* 39:6A–2k to mean "uncompensated loss of income *or property*, or other uncompensated expenses, including, but not limited to, medical expenses." *Rogers, supra,* 366 *N.J.Super.* at 184, 840 *A.2d* 925.

Having determined that the State may place reasonable conditions on the filing of a lawsuit and distinguish between insured and uninsured drivers, we find that *N.J.S.A.* 39:6A–4.5a does not violate federal or state equal protection guarantees. Section 4.5a is rationally related to a legitimate governmental purpose and there is a " 'real and substantial relationship between the classification and the government purpose which it purportedly serves.' " *Whitaker, supra,* 147 *N.J.* at 357, 687 *A.*2d 738 (quoting *Barone, supra,* 107 *N.J.* at 368, 526 *A.*2d 1055).

## V.

We find that *N.J.S.A.* 39:6A–4.5b does not violate the due process and equal protection guarantees of the Federal and State Constitutions. Accordingly, we reverse the judgment of the Appellate Division and remand for proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN, and WALLACE—7.

*Opposed*—None.