# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3963-21

IN THE MATTER OF
REGISTRANT M.J.B.[1]

_____

Argued November 28, 2023 – Decided December 20, 2023

Before Judges Whipple, Mayer and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. 11090069.

James H. Maynard argued the cause for appellant M.J.B. (Maynard Law Office, LLC, attorneys; James H. Maynard, on the briefs).

John R. Mulkeen, Assistant Prosecutor, argued the cause for respondent State of New Jersey (Esther Suarez, Hudson County Prosecutor, attorney; Angela Halverson, Assistant Prosecutor, on the brief).

PER CURIAM

Registrant M.J.B. appeals from an August 18, 2022 order denying his motion to exclude his Registrant Risk Assessment Scale (RRAS) score in his re-

---

[1] We use initials pursuant to Rule 1:38-3(c)(9).

evaluation hearing and motion for a downward departure in his tier classification under the "heartland" exception to Megan's Law, N.J.S.A. 2C:7-1 to -23. He also challenges his classification as a Tier Two offender under Megan's Law and community notification requirements.

M.J.B. is a convicted sex offender. The facts related to M.J.B.'s convictions for two separate sexual assaults are recounted in In re Registrant M.J.B., No. A-3054-12 (App. Div. Feb. 19, 2020) (Order at 2-4). We need not repeat the facts. In that Order and Determination, we affirmed M.J.B.'s classification as a Tier Two offender,[2] finding the Megan's Law judge properly exercised his discretion in applying the RRAS factors. Id. at 8.

In February 2020, M.J.B. changed his residential address and place of employment, triggering a tier designation and community notification re-evaluation. The State reviewed all of the available evidence and recalculated M.J.B.'s RRAS score. The State determined M.J.B.'s revised RRAS score was

---

[2] The New Jersey Legislature delegated to the State's Attorney General the authority to promulgate guidelines identifying factors relevant to assessing the risk of re-offense under Megan's Law. N.J.S.A. 2C:7-8. Under this delegated authority, the Legislature adopted the RRAS, which establishes three categories of re-offense risk: low (thirty-six points or less), moderate (thirty-seven to seventy-three points), and high (seventy-four points or greater). Ibid.

fifty-two points,[3] again placing him in the Tier Two category. M.J.B. objected and requested judicial review of his tier designation. Additionally, M.J.B. filed motions for a downward departure in his tier designation under the "heartland" exception to Megan's Law and to exclude his RRAS scores from consideration in calculating his risk of re-offending.

The Megan's Law judge held hearings over the course of three non-consecutive dates. During the N.J.R.E. 104 hearings, the judge heard testimony regarding alternative methods for calculating a registrant's risk assessment. M.J.B. presented expert testimony from a forensic psychologist, Dr. Sean Hiscox, who explained M.J.B. had a low risk of re-offending. The expert further opined the RRAS was an inappropriate method for evaluating offenders who had not re-offended in five or more years. M.J.B. also presented testimony from two fact witnesses associated with The Innocence Project in support of his good character, steady employment, and stable home situation.

On August 18, 2022, the judge denied M.J.B.'s motions and entered an order classifying M.J.B. as a Tier Two offender with specific community notification requirements. In his accompanying August 18, 2022 written decision, the judge recognized M.J.B.'s positive reintegration into society "by

---

[3] In 2013, M.J.B. scored sixty-six points on the RRAS.

A-3963-21

becoming involved in his community, investing in his personal relationships, and obtaining and maintaining stable employment."

The judge also considered M.J.B.'s three psychosexual evaluations: a January 23, 1987 evaluation by Dr. Philip Witt; an August 3, 1987 evaluation by Dr. Mark Frank; and Dr. Hiscox's evaluations in June and July 2020. The judge noted Dr. Witt found M.J.B.'s conduct "neither repetitive nor compulsive." In reviewing the conclusions rendered by Dr. Frank, the judge stated the doctor found M.J.B. "extremely uncooperative and belligerent in the . . . evaluation" and M.J.B.'s "conduct was repetitive based on the nature of his two convictions" for sexual assault. However, Dr. Frank was unable to determine whether M.J.B.'s actions were motivated by "compulsive sexual pathology due to [M.J.B.]'s lack of cooperation during his evaluation."

The judge summarized the testimony and written reports proffered by Dr. Hiscox. The judge explained Dr. Hiscox relied on "a number of actuarial risk assessment tools in [his] report, including the Personality Assessment Inventory (PAI), the Static 99[R], the Stable-2007, the Acute-2007, and the RRAS." In using these actuarial tools, Dr. Hiscox "scored [M.J.B.] as below-average risk on the Static99[R] and low risk on the Stable-2007 and Acute-2007." When Dr.

4

Hiscox used the RRAS, he calculated M.J.B. scored forty-three points, which placed M.J.B. "at the low end of the moderate-risk range on that scale."

The judge further explained Dr. Hiscox calculated M.J.B.'s recidivism rate at two and a half percent, "just above the desistence level [less than two percent after five years]."  Dr. Hiscox testified the desistence level is the rate at which a sex-offender is no more likely to commit a new sex offense than an individual with a criminal history who committed no sexual offenses.  In concluding M.J.B. was low-risk for re-offense, Dr. Hiscox testified the research showed M.J.B.'s age, mid-fifties, indicated the sexual offense rate was "very low."  In his written report, Dr. Hiscox stated that "[f]or offenders over [sixty], recidivism is a rare event."  However, as of the hearing dates, M.J.B. was not over age sixty and, therefore, not within the age group that Dr. Hiscox claimed presented the lowest risk of re-offense.  Additionally, as of the hearing dates, M.J.B. remained above the two percent desistence level for determining the rate of recidivism.

The judge also considered the character testimony presented on M.J.B.'s behalf.  While the judge found the testimony credible, he noted the character testimony "was limited in nature" and based on the witnesses' "interactions with [M.J.B.] in a professional and/or quasi-professional setting" and "[n]othing in the record support[ed] either [character witness] having interacted with [M.J.B.]

in more personal circumstances." As a result, the judge found "an incomplete picture of [M.J.B.]'s post-incarceration adjustment."

In rendering his legal conclusions, the judge relied on existing case law in rejecting M.J.B.'s broad challenge to the general use of the RRAS for tier classification. The judge explained the use of the RRAS for tiering Megan's Law registrants had been upheld by courts in this State since 1996. Additionally, the judge noted "[t]he RRAS is unique from other risk assessment instruments in that it contains a *legal* element that is not present in the alternative tools suggested by [Dr. Hiscox]."

Additionally, because the RRAS was created as part of a legislative mandate, the judge explained he owed deference to that mandate. Further, the judge did not find M.J.B.'s expert presented sufficiently reliable studies or data relied upon by other professionals who evaluated, treated, and assessed the risk of sexual re-offense in situations similar to M.J.B.'s circumstances. Therefore, the judge concluded, "[t]he alternative score proposed by [M.J.B.]'s expert [was] unsupported by the record." Based on the foregoing, the judge found he was "not at liberty to overturn legal precedent requiring [the court] to consider and give deference to the RRAS as a legal instrument. Thus, the RRAS has been considered as one factor of many in th[e] [c]ourt's tier classification of [M.J.B.]."

A-3963-21

However, the judge agreed M.J.B. could challenge the RRAS as applied in his case. M.J.B. claimed his case fell outside the "heartland" of cases, justifying his challenge to the Tier Two designation and community notification requirements. In re Registrant G.B., 147 N.J. 62, 85 (1996). In seeking a "heartland" exception, a registrant is required to "establish that the [RRAS] score for that [particular] registrant does not accurately reflect the risk of re-offense." Id. at 82. However, citing G.B., the judge explained "[s]uch cases are rare, and the facts must be 'sufficiently unusual' to be considered outside the heartland of Megan's Law cases."

On this record, the judge concluded M.J.B. failed to present evidence permitting a downward departure in his tier classification. The judge rejected Dr. Hiscox's testimony regarding M.J.B.'s likelihood of recidivism. The information Dr. Hiscox claimed supported a downward adjustment was inapplicable to M.J.B. because M.J.B. was not over age sixty and M.J.B.'s recidivism rate remained above the desistence level.

Considering the evidence and testimony presented during the hearings, the judge found no evidence to "suggest[] that the particular facts of [M.J.B.]'s case [were] so unique and unusual that it f[ell] outside the heartland of Megan's Law cases." In rejecting the "heartland" exception, the judge noted M.J.B.

7

committed seemingly random, opportunistic, sexually violent, forceful attacks on women in his community. The fact that [M.J.B.] has lived offense-free in the community for a substantial period of time and otherwise appears to live a stable life is not so unusual as to warrant a downward departure in [M.J.B.]'s tier classification and scope of community notification.

On appeal, M.J.B. presents the following arguments:

POINT I

THE RRAS IS NEITHER RELIABLE NOR VALID FOR ASSESSING THE RISK OF SEX OFFENSE RECIDIVISM OR INDIVIDUALS WHO HAVE LIVED FIVE OR MORE YEARS, OFFENSE-FREE, IN THE COMMUNITY.

A. Only Factors Relevant to Risk May Be Used to Classify Registrants into Risk Categories under Megan's Law.

B. Risk Assessment Instruments Must Be Periodically Adjusted Over Time, Based on Evolving Research Regarding Which Factors Are Relevant to Sex Offense Recidivism Risk.

C. The RRAS Is Not Relevant for Tiering of Registrants Who Have Lived Offense-Free in the Community for More than Five Years.

D. An Alternative Assessment Methodology Exists that Is Both Reliable and Valid for Predicting Risk Among Five-Year+ Registrants.

E. The Court Failed to Conduct the Proper Legal Analysis to Determine the Relevance, Reliability, and,

8

therefore, the Admissibility, of the RRAS for Use with Five-Year+ Registrants.

POINT II

M.J.B. HAS PROVIDED SUFFICIENT, VALID AND RELIABLE EVIDENCE IN SUPPORT OF AN OUTSIDE THE HEARTLAND TIER REDUCTION BASED ON HIS DEMONSTRABLY LOW RISK OF SEX OFFENSE RECIDIVISM.

A.  The Purpose of Megan's Law Cannot Be Fulfilled Absent Reliable Assessments of Current Risk.

B.  The Megan's Law Court Erred as [a] Matter of Law, and Abused Its Discretion in Denying M.J.B.'s "Outside the Heartland" Tier Reduction Motion.

"We review a trial court's conclusions regarding a Megan's Law registrant's tier designation and scope of community notification for an abuse of discretion."  In re Registrant B.B., 472 N.J. Super. 612, 619 (App. Div. 2022). "[A]n abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  State v. R.Y., 242 N.J. 48, 65 (2020) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).  "A trial court's interpretation of the law and the . . . consequences that flow from established facts are not entitled to any special deference."  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

In a tier classification proceeding, the State bears the burden of proving by clear and convincing evidence that the proposed tier classification and scope of community notification for a particular registrant are warranted. See In re Registrant M.F., 169 N.J. 45, 54 (2001); In re Registrant R.F., 317 N.J. Super. 379, 383-84 (App. Div. 1998), rev'd on other grounds, M.F., 169 N.J. at 63.

Megan's Law "[t]ier designations reflect a registrant's risk of re-offense, as determined by a judge assessing various information, including thirteen factors referenced in the RRAS." In re Registrant C.J., 474 N.J. Super. 97, 106 (App. Div. 2022) (citing In re Registrant A.A., 461 N.J. Super. 385, 402 (App. Div. 2019)). The RRAS was developed for the State's use "to establish its prima facie case concerning a registrant's tier classification and manner of notification." In re Registrant T.T., 188 N.J. 321, 328 (2006) (quoting In re Registrant C.A., 146 N.J. 71, 110 (1996)).

"Although a tier classification made on the basis of the [RRAS] should be afforded deference, a court should not rely solely on a registrant's point total when it conducts a judicial review of a prosecutor's tier level classification or manner of notification decisions." C.A., 146 N.J. at 108. "Judicial determinations regarding tier classification and community notification are made 'on a case-by-case basis within the discretion of the court[]' and 'based on

10

all of the evidence available[,]' not simply by following the 'numerical calculation provided by the [RRAS].'" C.J., 474 N.J. Super. at 120 (alterations in original) (quoting G.B., 147 N.J. at 78-79).

Because the State is responsible for initiating the tier classification process, the Supreme Court "prescribed a two-step procedure for evidence production." C.A., 146 N.J. at 83. "In the first step, the prosecutor has the burden of going forward with prima facie evidence that 'justifies the proposed level and manner of notification.'" Ibid. (quoting Doe v. Poritz, 142 N.J. 1, 32 (1995)). "In the second step, assuming the prosecutor's burden is met, the registrant then has the burden of producing evidence challenging the prosecutor's determinations on both issues." Id. at 83-84 (citing Doe, 142 N.J. at 32). "Once the State has satisfied its burden of going forward, the court 'shall affirm the prosecutor's determination unless it is persuaded by a preponderance of the evidence that it does not conform to the laws and Guidelines[,]'" based upon the court's independent review of the case and its merits. Id. at 84 (quoting Doe, 142 N.J. at 32).

In addressing a registrant's classification, a judge is free to consider reliable evidence beyond the RRAS score, even if such evidence would not be

admissible under our Rules of Evidence, because the "hearing process . . . is not governed by the [R]ules of [E]vidence." Id. at 83 (internal citation omitted).

As our Supreme Court stated, the RRAS "is presumptively accurate and is to be afforded substantial weight—indeed it will even have [a] binding effect— unless and until a registrant 'presents subjective criteria that would support a court not relying on the tier classification recommended by the [RRAS].'" G.B., 147 N.J. at 81 (quoting C.A., 146 N.J. at 109). Deference is given to the RRAS, and "[o]nly in the unusual case where relevant, material, and reliable facts exist for which the [RRAS] does not account, or does not adequately account, should the [RRAS] score be questioned." Id. at 82.

As we stated in In re Registrant J.G., "[c]hallenges to the [RRAS] itself, or challenges to the weight afforded to any of the individual factors that comprise the [RRAS], are not permitted." 463 N.J. Super. 263, 276 (App. Div. 2020) (all but first alteration in original) (quoting G.B., 147 N.J. at 85). In J.G., we held challenges to the RRAS might be permitted if "based on empirical studies or data developed since 1996." Ibid.

In most challenges to a registrant's RRAS score or the scope of community notification, "expert testimony will be neither necessary nor helpful." G.B., 147 N.J. at 85. However, "in limited circumstances, expert testimony may be

introduced . . . to establish the existence of unique aspects of a registrant's offense or character that render the [RRAS] score suspect." Id. at 69. The trial court has "the ultimate authority to decide what weight to attach to the [RRAS] and what weight to attach to expert testimony." Id. at 85. That is because "[t]he final determination of dangerousness lies with the courts, not the expertise of psychiatrists and psychologists." Id. at 86 (quoting In re D.C., 146 N.J. 31, 59 (1996)).

Applying these standards, we are satisfied the Megan's Law judge thoroughly reviewed the evidence, testimony, and legal arguments in finding the State established, by clear and convincing evidence, M.J.B.'s RRAS score of fifty-two points supported M.J.B.'s designation as a Tier Two offender and ascribed appropriate community notification requirements.[4] We are satisfied there were no unique circumstances warranting a downward adjustment of M.J.B.'s tier designation under Megan's Law "heartland" exception. Reviewing the record as a whole, we discern no abuse of discretion in the judge's tier designation and community notification requirements.

Additionally, we note that we are not the Legislature. "We do not pass

---

[4] Even Dr. Hiscox calculated M.J.B.'s RRAS score at forty-three points, which placed M.J.B. in the same Tier Two category as the State's RRAS calculation.

judgment on the wisdom of a law or render an opinion on whether it represents sound social policy. That is the prerogative of our elected representatives." Caviglia v. Royal Tours of Am., 178 N.J. 460, 476 (2004). Registrants should direct requests for implementation of new judicial tools for determining Megan's Law tier classifications to the New Jersey Legislature. In so doing, a registrant would notify the New Jersey's Attorney General of their request to modify or eliminate the current tool used for assessing the risk of sexual re-offense and would have an opportunity to present evidence why the RRAS should, or should not, be modified or eliminated.

To the extent we have not addressed any of M.J.B.'s remaining arguments, such arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed. The September 20, 2022 order of the New Jersey Supreme Court, staying the August 18, 2022 order pending this court's disposition of M.J.B.'s appeal, shall be dissolved within thirty days unless M.J.B. seeks a stay from the New Jersey Supreme Court before the expiration of the thirty-day period.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3963-21